UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



ROBERT PILLOW

        Plaintiff,

vs.

SONEPAR DISTRIBUTION NEW ENGLAND, INC., CARL BRAND, and MARK PETERSON

        Defendants.

Civil Action No. 03-12419-NG

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Sonepar Distribution New England, Inc. ("Sonepar"), Carl Brand, and Mark Peterson move to dismiss Counts II, III, IV, V, and VII of the Complaint ("Complaint" or "Cp.") for failure to state a claim.

### INTRODUCTION[1]

Plaintiff claims that he was terminated from his job with Sonepar "on account of his age." Cp. ¶24. He alleges that he worked for Eagle Electric Supply Co. (which Sonepar acquired in September 1999) from 1966 to 1978, and then from 1985 until his termination on September 8, 2000. Cp. ¶¶14-16. He claims he was told he was being terminated "because he did not have sufficient technical knowledge to service the

---

[1] This motion is based on (1) the facts alleged in plaintiff's Complaint, on which defendants rely solely for purposes of this motion, and (2) the Charge that plaintiff filed with the Massachusetts Commission Against Discrimination (MCAD), which is attached to defendant's accompanying Motion to Dismiss as Exhibit A. The Court may consider the MCAD charge on a motion to dismiss because the charge is a public record that is referred to in plaintiff's complaint. *See, e.g., Perch v. City of Quincy*, 204 F. Supp. 2d 130, 131 n.1 (D. Mass. 2002), citing *Edwin v. Blenwood Assocs.*, 9 F. Supp. 2d 70, 72 (D. Mass. 1998); *Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. 228, 231 n. 6 (D. Mass. 1997) (considering MCAD charge on motion to dismiss because "it is a public record and is also referred to in the complaint").

Original Equipment Manufacturing (OEM) customers," and claims that he "had more technical knowledge regarding OEM products than the younger employees who were retained when he was fired." *Id.* ¶¶22-24. He asserts that Carl Brand, Sonepar's Vice President of Sales, "performed a sham investigation into Pillow to create a pretext for the termination," and that Brand "recommend[ed] that Pillow be terminated based upon the results of the investigation." *¶Id.* ¶¶13, 46, 47, 53. He also alleges that Mark Peterson, the President of Sonepar, "at one point asked Pillow when he would retire." *Id.* ¶¶12, 27.

Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination on or about February 9, 2001 ("Charge"), naming Sonepar, Eagle Electric Supply Co., and Mark Peterson as the only respondents. *Id.* ¶4. On or about August 27, 2003, plaintiff filed this action, in which he asserts claims against Carl Brand as well.[2] Plaintiff claims that Sonepar violated M.G.L. c. 151B and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§621 *et seq.*, by allegedly terminating him because of his age. Cp., Counts I and VI. He claims that Peterson and Brand aided and abetted the alleged violation of Chapter 151B (Counts II and IV), and that they tortiously interfered with his at-will employment contract with Sonepar. (Counts III and V). Finally, he asserts a claim of "Reliance" against Sonepar based on allegations that he leased a car in his own name in reliance "upon the representation of Sonepar that he (Mr. Pillow) would remain with the company and the company would pay the lease." Cp., Count VII, ¶¶59-64.

As discussed below, Counts II through V (asserting claims against the individual defendants) and Count VII (for "Reliance") fail to state claims on which relief may be granted, and should therefore be dismissed.

---

[2]   Defendants were not served with the Complaint until November 2003.

2

## DISCUSSION

I. **THE CHAPTER 151B CLAIMS AGAINST BRAND AND PETERSON FOR AIDING AND ABETTING (COUNTS II AND IV) SHOULD BE DISMISSED.**

   A. **The Chapter 151B Claim Against Brand Should Be Dismissed Because Plaintiff Failed to Identify Him in the MCAD Charge.**

Count IV of Plaintiff's Complaint asserts a claim against defendant Carl Brand under M.G.L. c. 151B, §4, for "aiding and abetting" Sonepar's purported violation of Chapter 151B. A plaintiff may not assert a claim against a defendant under M.G.L. c. 151B unless he has filed timely claims against that defendant with the Massachusetts Commission Against Discrimination ("MCAD").[3] M.G.L. 151B, §5. Regulations promulgated by the MCAD under Chapter 151B require that the charge contain "appropriate identification of the Complaint[s] and the person[s] alleged to have committed unlawful discriminatory acts." 804 C.M.R. §1.10(5)(d) (emphasis added). The purpose of this requirement is to provide each defendant with notice of a potential suit against him and an opportunity to investigate and conciliate the discrimination claim. *Carter v. Commissioner of Correction*, 43 Mass. App. Ct. 212, 217, 681 N.E.2d 1255, 1259 (1997); *Chapin v. University of Massachusetts at Lowell*, 977 F. Supp. 72, 82 (D. Mass. 1997), *citing Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996).

A plaintiff's failure to file a timely charge with the MCAD bars recovery under Chapter 151B in a subsequent judicial action. *Andrews v. Arkwright Mutual Ins. Co.*, 423 Mass. 1021, 1022, 673 N.E.2d 40, 41 (1996); *King v. First*, 46 Mass. App. Ct. 372, 375, 705 N.E.2d 1172, 1174 (1999). For this reason, many courts have dismissed Chapter 151B claims brought against individual defendants who were not named in the MCAD

---

[3] At the time of plaintiff's termination, Chapter 151B required that he file his claim within six months of the allegedly discriminatory conduct. *See* M.G.L. c. 151B, §5 (prior to its 2002 amendment).

3

charge. *See, e.g., Powers v. H.B. Smith Co.*, 42 Mass. App. Ct. 657, 667, 679 N.E.2d 252, 258-59 (1997); *Stewart v. Kuligowska*, 28 F. Supp. 2d 690, 692-93. (D. Mass. 1998) (dismissing plaintiff's discrimination charge against individual supervisors who were not named, and thus not "appropriate[ly] identif[ied]," in MCAD charge); *Chapin*, 977 F. Supp. at 82 (same).[4]

Here, plaintiff alleges that he "timely filed a complaint at the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission and more than 90 days have elapsed since the filing." Cp. ¶4. Plaintiff, however, does not allege that he asserted any claim in his MCAD Charge against Carl Brand, and the MCAD Charge shows on its face that <u>it made no mention of Carl Brand, whether by name or by employment position.</u> *See* Exhibit A to Motion to Dismiss (MCAD Charge). Indeed, the Charge did not even refer to the purported conduct on which plaintiff now bases his claim against Brand, namely, the "sham investigation" into plaintiff's technical abilities and Brand's alleged recommendation that the plaintiff be terminated. *Id.*; Cp. ¶¶46, 47.

In short, because the Charge failed to identify Brand and gave him no notice or opportunity to conciliate the discrimination claim that plaintiff now asserts against him, the count against Brand for aiding and abetting should be dismissed.

---

[4] *See also Cuddi v. Gallery Gift Shoppes*, No. 2003-1369-C (Mass. Super. Ct. Oct. 24, 2003) (2003 WL 22700536 at *5) (dismissing Chapter 151B claim against individual defendant where MCAD charge did not name individual defendant and did not "directly accuse [the individual defendant] of engaging in the allegedly harassing or discriminatory conduct such that she would have sufficient notice or opportunity to conciliate the charge"); *Andrews v. Cressy*, No. Civ. A. A97-01426 (Mass. Super. Ct. Mar. 4, 1998) (1998 WL 157002 at *3 n.3) ("[t]o the extent that plaintiffs may assert a G.L. c. 151B claim against Cressy, the fact that plaintiffs did not name Cressy in their MCAD complaints bars the claims").

> **B.  The Claims Against Brand and Peterson for Aiding and Abetting Are Fatally and Facially Deficient.**
>
> > **1.  Plaintiff Does Not Allege that Brand or Peterson Had Any Intent to Discriminate Against Plaintiff, Knowingly Participated in Any Joint Enterprise to Discriminate Against Him, or Committed Any Separate Act to Further Such Enterprise.**

Plaintiff seeks to impose liability on Brand and Peterson under M.G.L. c. 151B, §4(5), for aiding and abetting Sonepar's alleged violation of Chapter 151B. Cp., Counts II and IV. Plaintiff, however, fails to allege facts that the MCAD has held are essential to such a claim, including that Brand or Peterson had any <u>intent to discriminate</u> against the plaintiff, that they <u>knowingly participated in a joint enterprise</u> to discriminate against him, or that Brand or Peterson committed any <u>separate act</u> in furtherance of any such enterprise.

The SJC has recognized that the MCAD's interpretations of Chapter 151B are "entitled to substantial deference." *City of New Bedford v. MCAD*, 440 Mass. 450, 465, 799 N.E.2d 578, 589-90 (2003). In *Harmon v. Malden Hospital*, Docket No. 96-BEM-1146, 19 MDLR 157 (MCAD 1997), the MCAD held that an aiding and abetting claim under Chapter 151B requires a showing "that a wholly <u>individual and distinct wrong</u> was committed by the proposed or named individual respondent(s)." (Emphasis added.) The complainant must also show "that the aider or abetter <u>shared an intent to discriminate</u> not unlike that of the alleged principal offender, and that the aider or abetter <u>knew of his or her supporting role</u> in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B." *Harmon*, 19 MDLR at 158 (emphasis

added).[5] *See also Woodason v. Town of Norton School Committee*, Docket No. 98-BEM-0624 (MCAD Feb. 19, 2003) (2003 WL 554332 at *4) (individual defendant's action or failure to act must be "in <u>deliberate disregard</u> of the complainant's rights allowing the inference to be drawn that there was <u>intent to discriminate</u> or interfere with complainant's exercise of rights") (emphasis added); *Beaupre v. Cliff Smith & Associates*, 50 Mass. App. Ct. 480, 495, 738 N.E.2d 753, 767 n.23 (2000) (liability for aiding and abetting violation of Chapter 151B requires "the requisite <u>intent to discriminate</u>") (emphasis added).

The plaintiff here has failed to allege facts that could support a claim of aiding and abetting liability against either Brand or Peterson. Perhaps most significantly, the Complaint contains no allegation that Brand or Peterson ever had any <u>intent</u> to discriminate against the plaintiff, which is a necessary element of such a claim. Similarly absent from the Complaint, and similarly fatal to plaintiff's claims, is any allegation of a joint enterprise to discriminate against the plaintiff, or an allegation that Brand or Peterson had knowledge, much less "<u>specific</u> knowledge of [their] supporting role" in any such joint enterprise.

The facts plaintiff does allege in support of his claim against Brand and Peterson fall far short of the required allegations of intent, knowledge, and participation in a joint enterprise. In this regard, other than the conclusory assertion that he "aided and abetted"

---

[5] The MCAD's Guidelines on Sexual Harassment in the Workplace similarly require, with respect to aiding and abetting liability, that there be "a <u>joint enterprise</u> between more than one participant," that the individual have <u>specific knowledge of his or her supporting role</u> in the unlawful enterprise," that the individual have committed a wrongful act that is "<u>separate and distinct</u> from the underlying claim or an act in furtherance of the underlying claim," and that the individual "<u>shared an intent to discriminate</u> not unlike that of the alleged principal offender." Guidelines at Section IV(C) (emphasis added).

6

Sonepar's termination of the plaintiff "on account of his age," the only facts plaintiff alleges as to Peterson are:

- that Peterson was Sonepar's President;
- that Peterson participated in Brand's meeting with Svendsen;
- that Peterson "at one point" asked plaintiff "when he would retire," and
- that Peterson "terminated" the plaintiff.

Cp. ¶¶12, 27, 33, 40. These allegations do not come close to alleging that Peterson intended to discriminate against plaintiff because of his age, that he terminated plaintiff because of any such discriminatory intent, or that he knowingly participated in a joint enterprise to discriminate against the plaintiff, which are all necessary to support such a claim.

Similarly, the only facts plaintiff alleges as to Brand are:

- that Brand was Eagle Electric's Vice President of Sales;
- that he performed a purportedly "sham" investigation into plaintiff's technical abilities "to create a pretext" for plaintiff's termination;
- that the "sham" investigation consisted of meetings with Sonepar's Vice President of Engineering, Carl Svendsen, and with John McWeeney, during which Svendsen and McWeeney gave their opinions of plaintiff's and other account executives' technical competence; and
- that Brand "recommended" plaintiff's dismissal "[b]ased ... on the conversations with Svendsen and McWeeney."

Cp. ¶¶36, 40-44, 46, 47.

7

As with Peterson, there is no allegation that Brand had any intent to discriminate against the plaintiff or knowingly participated in any joint enterprise to deprive plaintiff of his rights. Plaintiff's mere characterization of Brand's investigation as a "sham" and a "pretext" cannot substitute for critical allegations of fact. Moreover, notwithstanding plaintiff's conclusory assertions, there are no specific factual allegations anywhere in the Complaint that could support a reasonable conclusion that Brand's purported investigation was not conducted in an honest effort to assess the account executives' technical skills. There is no allegation, for example, that Svendsen and McWeeney did not give honest opinions as to the technical skills of the plaintiff and of Sonepar's other account managers, that Brand should have known or suspected the results of the investigation to be anything less than legitimate and accurate, or that he did not base his recommendation on what Svendsen and McWeeney told him.

In short, because the Complaint fails to plead that Brand or Peterson had any intent to discriminate against the plaintiff or that they knew they were supporting a joint enterprise to discriminate against the plaintiff in terminating him because of his age, plaintiff's aiding and abetting claims against Brand and Peterson cannot stand. *See, e.g., Daigle v. NECX, Inc.*, No. 991555D (Mass. Super. Ct. Feb. 23, 2001) (2001 WL 1199868 at *3), dismissing claims under G.L. c. 151B, §4(5) for aiding and abetting of sex discrimination and harassment where complaint failed to include any specific factual allegations that plaintiff's supervisors and upper-level management had discriminated against or harassed the plaintiff or aided or abetted such conduct by others).

## 2. Brand and Peterson Should Not Be Held Individually Liable for Routine Employment Decisions They Made as Part of Their Job.

In several recent decisions, the MCAD has suggested that an individual defendant is not liable for an allegedly discriminatory employment decision made in the scope of his own employment as a manager, or for an employment decision as to which he was not the ultimate decisionmaker. In *Woodason v. Town of Norton School Committee*, Docket No. 98-BEM-0624 (MCAD Jan. 31, 2002) (2002 WL 977223), for example, MCAD Hearing Officer Guastaferri found that it would be contrary to the "spirit and intent" of the anti-discrimination laws to impose individual personal liability on a school superintendent for terminating the plaintiff after concluding that the school could not reasonably accommodate the plaintiff's disability. As Commissioner Guastaferri stated in this regard in *Woodason*, "[i]t is appropriate to distinguish situations in which the individuals are acting as the agent of the employer and <u>making decisions within the scope of their employment</u>, from cases where the individuals are perpetrators of acts of discrimination, such as sexual harassment, that are not within the scope of their employment." 2002 WL 977223 at *10 (emphasis added).[6] Similarly in *MCAD v. Northeast Nursery, Inc.*, Docket No. 97-BEM-2957 (MCAD Feb. 6, 2003) (2003 WL 1908061 at *7), the MCAD Hearing Officer concluded that "it would be inequitable to hold managers individually liable for a decision which the owner of the company may have made or contributed to making." *See also MCAD v. Atamian Volkswagen, Inc.*, Docket No. 98-BEM-2818 (MCAD Feb. 11, 2003) (2003 WL 403151 at *12) (declining

---

[6] In *Woodason v. Town of Norton School Committee*, Docket No. 98-BEM-0624 (MCAD Feb. 19, 2003) (2003 WL 554332 at *4), the full Commission reviewed Officer Guastaferri's decision and concluded that the evidence did not establish the requisite "intent to discriminate" required to impose individual aiding and abetting liability on the school superintendent who had terminated the plaintiff due to alleged handicap discrimination.

9

to impose aiding and liability on an individual respondent for alleged gender discrimination in terminating an employee, even though that employee was the company president, where there was no evidence that he "took any sort of an active or deliberate role in any of the conduct alleged to be discriminatory").

For similar reasons, the aiding and abetting claims against Brand and Peterson cannot stand. Even if plaintiff had alleged that either of them had any intent to discriminate against Pillow, plaintiff seeks to impose individual liability on them solely for actions they are alleged to have taken in the scope of their employment, namely, investigating and recommending plaintiff's dismissal (Brand), and "terminating" the plaintiff (Peterson). Because there is no allegation that either of them engaged in any conduct outside the scope of their employment, or even that either of them was ultimately responsible for the decision to terminate the plaintiff, the aiding and abetting claims against them should be dismissed for these reasons as well.

## II. THE TORTIOUS INTERFERENCE CLAIMS AGAINST BRAND AND PETERSON SHOULD BE DISMISSED.

### A. The Tortious Interference Claim Against Brand Is Barred Because Plaintiff Failed to Pursue His MCAD Remedies Against Him.

The tortious interference claim against Brand in Count V should be dismissed because plaintiff failed to pursue his administrative remedies against Brand in the MCAD. *See* Section I(A) above. The exclusivity provision of Chapter 151B prohibits any claim against a defendant who was not named in the MCAD charge when the claim is based on the same allegations as the Chapter 151B claim, and is thus merely a "recast" version of the Chapter 151B claim. *See Dorn v. Astra USA,* 975 F. Supp. 388, 395 (D. Mass. 1997) (dismissing intentional interference claim, which was "grounded in

10

[plaintiffs'] general claims of sexual harassment," where plaintiffs had not filed complaints under Chapter 151B). As the SJC stated in *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 557-58, 664 N.E.2d 808, 813 (1996),

> "[w]here ... c. 151B applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contrary. Otherwise, to permit such duplication of remedies would allow claimants to bypass the procedural requirements defined by the Legislature in c. 151B, crippling the effectiveness of this specific statutory remedy for discrimination in employment."

Because plaintiff's tortious interference claim against Brand is based on exactly the same factual allegations as the aiding and abetting claim against him, and because plaintiff did not name or even mention Brand or his allegedly actionable conduct in his MCAD Charge, plaintiff should not be allowed to circumvent the procedural requirements of Chapter 151B by couching the same allegations against him as a claim for tortious interference. Count V should therefore be dismissed.

### B. The Tortious Interference Claims Against Brand and Peterson Are Barred Because Plaintiff Has Failed to Allege Essential Elements of the Claim.

The tortious interference claims against Brand and Peterson (Counts III and V) should be dismissed because plaintiff has failed to allege the factual elements that are needed to support such claims. In an action for intentional interference with advantageous relations, an employee must allege and prove: "(1) that [he] had an advantageous relationship with [his] employer; (2) the defendant <u>knowingly induced the employer</u> to break that relationship; (3) the defendant's interference, in addition to being <u>intentional</u>, was <u>improper in motive or means</u>; and (4) the employee was harmed by the defendant's actions." *Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 781, 752

11

N.E.2d 700, 715 (2001), *citing Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 122, 731 N.E.2d 1075 (2000) (emphasis added).

In addition, where the claim is "asserted against an individual official of the employer, the plaintiff is required to show, as to 'improper motive or means,' that the 'controlling factor' in the alleged interference was <u>'actual' malice</u>; 'implied' malice is not sufficient." *Weber*, 434 Mass. at 781, 752 N.E.2d at 715, *quoting Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 429 N.E.2d 21 (1981) (emphasis added). The SJC has "defined the requisite 'malice' in this context as 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest' of the employer." *Id.*, 434 Mass. at 782, 752 N.E.2d at 715. The Court has also recognized that a discriminatory motive does not necessarily allow an inference that the defendant acted with the required "actual malice." *Id.*, 384 Mass. at 782, 752 N.E.2d at 716 (""[t]ortious interference by a corporate officer requires unjustified and malicious interference with an employment relationship, <u>a potentially different concept</u> than status-based discriminatory intent"), *quoting Ferguson v. Michael Foods, Inc.*, 74 F. Supp. 2d 862, 873 (D. Minn. 1999) (emphasis added). A claim for tortious interference should be dismissed if these elements are not properly pled. *See American Transportation Ins. Co., Inc. v. Balboa Ins. Co.*, Civ. A. No. 88-1834-MC (D. Mass. Aug. 2, 1989) (1989 WL 90425 at *2) (dismissing tortious interference claim where plaintiff failed to plead defendant's intent to interfere and interference caused by defendant's acts).

Here, plaintiff has failed to plead the requisite elements of a claim for tortious interference against Brand and Peterson. Most critically, there is no allegation that Brand or Peterson acted with any kind of intent toward the plaintiff, much less with the "actual

malice" that is required to support a claim of tortious interference against an individual official of the plaintiff's employer. *See Weber, supra.* And even if there were any such allegation, there is no allegation of any conduct that could amount to "interference." Peterson's only involvement is alleged to be his "termination" of the plaintiff, and there is no allegation that Brand's investigation and recommendation actually induced plaintiff's termination. Because plaintiff has failed to plead the necessary elements of inducement and actual malice, the tortious interference claims against Brand and Peterson are facially deficient and should be dismissed.

### C. The Tortious Interference Claims Should Be Dismissed to the Extent They Purport to Seek Recovery for Emotional Distress and Mental Suffering, Which Are Precluded by the Exclusivity Provision of the Workers' Compensation Act.

Finally, plaintiff's tortious interference claims against Brand and Peterson should be dismissed to the extent that plaintiff purports to seek recovery for "emotional distress and mental suffering" as a result of that claim. Cp. ¶¶34, 54. Under Massachusetts law, "[c]ommon law claims are barred by the exclusivity provision of the workers' compensation act where 'the plaintiff is shown to be an employee; his condition is shown to be a "personal injury" within the meaning of the compensation act; and the injury is shown to have arisen "out of and in the course of ... employment." *Green v. Wyman Gordon Co.,* 422 Mass. at 558, 664 N.E.2d at 813, *citing Foley v. Polaroid Corp.,* 381 Mass. 545, 548-59, 413 N.E.2d 713-14 (1980), *quoting* M.G.L. c. 152, §26. *See also Patriarca v. Center for Living and Working, Inc.,* No. 99689B (Mass. Super. Ct. Sep. 8, 1999) (1999 WL 791888 at *4) (claim for "negligent supervision/negligent retention" is barred by exclusivity provision of Workers' Compensation Act "to the extent that her claim alleges emotional distress or physical harm resulting from her termination")

13

(emphasis added); *Daigle v. NECX, Inc.*, 2001 WL 1199868 at *6 (dismissing counts for negligent and intentional infliction of emotional distress on ground that claims are barred by exclusivity provision of Workers' Compensation Act).

Because plaintiff's tortious interference claims are based solely on the fact that plaintiff was terminated, any claim for emotional distress and mental suffering under those counts is barred by the exclusivity provision of the Workers' Compensation Act.

### III. THE "RELIANCE" COUNT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Count VII of the Complaint purports to assert a claim of "Reliance" against Sonepar. Plaintiff alleges that, in November 1999, Peterson "told Pillow to lease a car in his name"; that Peterson "convinced Pillow to lease the car" by telling him, "don't worry, you're not going anywhere"; that "Pillow leased a car and was obligated to pay lease payments in the amount of $487.00 per month for the term of the lease"; and that "Pillow relied to his detriment upon the representation of Sonepar that he (Mr. Pillow) would remain with the company and the company would pay the lease." Cp. ¶¶60-64. On these allegations, plaintiff asserts that he "has a claim of detrimental reliance against Sonepar." *Id.* ¶64. This claim fails as a matter of law for at least two reasons.

#### A. Plaintiff Has Not Adequately Pled the Elements of Detrimental Reliance.

To state a claim under Massachusetts law for detrimental reliance, or promissory estoppel, plaintiff must allege that "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Carroll v. Xerox*

*Corp.*, 294 F.3d 231, 242 (1st Cir. 2002), *quoting Loranger Construction Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 374 N.E.2d 306, 308 (1978). A promisee's reliance on a promise may substitute for consideration to bring about the formation of a binding and enforceable contract only if the promisee can also prove "<u>all the necessary elements of a contract</u> other than consideration." *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850, 647 N.E.2d 1174, 1178-79 (1995) (emphasis added). Among other things, the plaintiff must establish that the alleged promise was sufficiently definite and certain in its terms to permit the conclusion that it was intended as a firm and binding commitment. *See, e.g., Santoni v. Federal Deposit Ins. Co.*, 677 F.2d 174, 177 (1st Cir. 1982); *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 442, 597 N.E.2d 1017, 1023-24 (1992). A party who makes such a claim must also establish that his <u>reliance</u> on the purported promise was <u>reasonable</u>. *O'Blenes v. Zoning Bd. of Appeals*, 397 Mass. 555, 558, 492 N.E.2d 354, 356 (1986); *Rooney v. Paul D. Osborne Desk Co.*, 38 Mass. App. Ct. 82, 83, 645 N.E.2d 50, 51 (1995) (promissory estoppel requires reasonable reliance).

A number of courts applying Massachusetts law have recognized that the plaintiff does not state a claim for promissory estoppel based on asserted reliance on representations of continued employment when that reliance is not reasonable, as a matter of law. For example, in *Pitts v. Lucey*, No. 9501892 (Mass. Super. Ct. Dec. 28, 1995) (1995 WL 1146866 at *2), the court dismissed a claim of promissory estoppel brought by a terminated employee who alleged that he had come to work for the defendant in reliance on representations that he claimed led him to believe he would be employed for a definite term. The court held as a matter of law that the plaintiff could not reasonably

15

have anticipated employment for a set term based on the defendant's representations as to such matters as his annual pay and a performance review at six months. *Id.* As the Court stated, where nothing in the complaint indicated that the plaintiff was anything other than an at-will employee, and "[w]here there are allegations of discussion about pay and benefits, but <u>nothing was said regarding the duration of employment</u>, the discussions cannot reasonably be construed as an offer for a term." *Id.* (emphasis added). *See also Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 287 (D. Mass. 1987) ("[t]he promise of secure and continued employment is simply too vague to be enforceable under the doctrine of [detrimental reliance] and thereby transform the nature of the plaintiff's employment from at-will to employment for a definite period.") For these reasons, the Court in *Whelan v. Intergraph Corp.*, 889 F. Supp. 15, 18 (D. Mass. 1995), held that statements that the plaintiff "could count on a long term commitment from [the defendant]" were insufficient as a matter of law to support a reasonable belief that plaintiff would be employed for a term, and dismissed plaintiff's claim.[7]

Here, plaintiff has failed to plead facts that could support a claim for detrimental reliance. First, plaintiff has failed to plead that defendant made any promise that was sufficiently definite and certain in its terms to permit the conclusion that it was intended as a firm commitment. Peterson's alleged assertion in November 1999 that plaintiff "was not going anywhere" is inherently vague and cannot reasonably be viewed as a promise

---

[7] *See also Hansen v. J.L. Hammett International, Inc.*, No. A 9800849 (Mass. Super Ct. Sep. 2, 1999) (1999 WL 1073649 at *7) ("an at-will employee asserting [promissory] estoppel would have to show that she <u>reasonably</u> relied on an <u>unambiguous</u> promise"; where plaintiff was at-will employee, as a matter of law she could not reasonably rely on statements that company was "family-oriented" and cared about its employees to assert right to work part-time to care for child with medical needs), *quoting Upton v. JWP Businessland*, 425 Mass. 756, 760, 682 N.E.2d 1357, 1360 (1997) (emphasis added); *Joyce v. McDonald*, 50 Mass. App. Ct. 1116, 751 N.E.2d 934 (2001) (2001 WL 96490 at *1) (unpublished opinion) (plaintiff as matter of law could not reasonably rely on representations in employee handbook for expectation of continued employment, where, among other things, representations "[could not] be read as rising to the level of a binding promise, in the contractual sense").

that plaintiff would be employed for any set period. Indeed, plaintiff's own admissions that he was an at-will employee conclusively rebut the suggestion that plaintiff had any right to continued employment. Cp. ¶¶32, 52 ("Pillow had an at will employment contract with Eagle Electric/Sonepar."). Plaintiff cannot claim that he reasonably relied on the indefinite statement that he "wasn't going anywhere" in deciding to lease a car in his own name, or in assuming that he would remain employed by Sonepar during the term of the lease, when he knew that his employment could be terminated for any reason.

Nor has plaintiff pleaded any facts that suggest any inequity that would require enforcement of the promise, even if plaintiff had pled facts that could support enforcing it on a reliance theory. Most significantly, plaintiff does not plead that he has not had the benefit of the car he leased, or that Sonepar has somehow been unjustly enriched by the lease. For both of these reasons, plaintiff's count for "Reliance" fails to state a claim on which relief may be granted.

### B. The "Reliance" Claim Is Barred by the Exclusivity Provision of Chapter 151B.

Like plaintiff's other claims, plaintiff's claim for "Reliance" is based squarely on the termination of his employment, which he alleges was due to age discrimination. Indeed, plaintiff alleges in the first paragraph of his Complaint that "[t]his is an action for damages and injunctive relief <u>arising out of the termination</u> of Robert A. Pillow." Cp. ¶1 (emphasis added). His "Reliance" claim is based on the alleged representation that plaintiff was "not going anywhere," e.g., that he would not be terminated, and as damages on this claim he asks that "Sonepar reimburse Pillow for the car lease payments he assumed after relying on Peterson's representations that Pillow would <u>remain with Sonepar</u>." Cp. at page 6 (emphasis added). Where plaintiff acknowledges that he was an

17

at-will employee, and where plaintiff does not allege that Sonepar had any other reason for terminating him, the only basis for liability on any of his claims is his assertion that he was terminated "on account of his age." Cp. ¶24. In sum, plaintiff's "Reliance" claim is nothing more than a restated version of his age discrimination claims, couched in a different legal theory, but depending on the same allegations that he was terminated because of his age.

The Supreme Judicial Court held in *Green v. Wyman-Gordon Co.*, 422 Mass. at 558, 664 N.E.2d at 813, that where, as here, a plaintiff's common-law claims are "merely recast versions" of his discrimination claims under Chapter 151B, those claims are barred by the exclusivity provision of Chapter 151B. *See also Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 582-86, 631 N.E.2d 555, 559 (1994) ("Chapter 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections."). On this reasoning, the First Circuit recognized in *Carroll v. Xerox Corp.*, 294 F.3d 231, 242 n.10 (1st Cir. 2002), that a breach of contract claim that "reduces to an alleged violation of the implied covenant of good faith and fair dealing implicit in an at-will employment agreement" by reason of an allegedly discriminatory termination "would clearly be barred by the exclusive discrimination remedy of Chapter 151B." (Emphasis added.) A number of Massachusetts courts have similarly rejected breach of contract claims that are based on allegations of discrimination prohibited by Chapter 151B, and that are therefore merely recast versions of the plaintiff's discrimination claim. *See, e.g., Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 514, 475 N.E.2d 1227, 1229-30 (1985), *aff'd*, 397 Mass. 1004, 491 N.E.2d 252 (1986) (dismissing claim for breach of implied covenant of good faith and fair dealing based on allegedly

discriminatory termination; Chapter 151B remedy is exclusive); *Beling v. Radiation Monitoring Devices, Inc.*, No. 97-3618 (Mass. Super. Ct. Sep. 20, 1999) (1999 WL 959675 at *4) (rejecting claim that employer breached employment contract by not complying with its anti-discrimination policy; contract claim is "merely a recast version[ ]" of her claim of handicap discrimination and therefore barred by exclusivity provisions of Chapter 151B); *Dolan v. Bay Construction Group Co.*, No. 924947 (Mass. Super. Ct. Nov. 9, 1994) (1994 WL 879528 at *3) (dismissing claim that employer breached employment contract by alleged failure to provide reasonable accommodations to handicapped employee where "Chapter 151B provides redress for interference with the public policy at stake").[8]

Similarly here, because plaintiff's "Reliance" claim is merely a restated version of his claim of age discrimination, which seeks to enforce a purported contract for continued employment on a theory of reliance, that claim would be barred by the exclusivity provision of Chapter 151B even if plaintiff had otherwise stated the proper elements of such a claim, which he has not.

---

[8] *See also Tech Plus, Inc. v. Ansel*, No. Civ. A. 96-01668-B (Mass. Super. Ct. Mar. 22, 1999) (1999 WL 482329 at *15) (rejecting breach of contract claim based on allegation that plaintiff was forced out of job due to gender and religious discrimination; "G.L. c. 151B provides the exclusive remedy for such a claim of employment discrimination"), *aff'd in pt, rev'd in pt on other grounds*, 59 Mass. App. Ct. 12, 793 N.E.2d 1256 (2003); *Tuccelli v. Bull HN Information Systems*, No. 912808C (Mass. Super. Ct. Jan. 12, 1994) (1994 WL 879602 at *5) (rejecting claim that plaintiff's purportedly discriminatory termination violated implied covenant of good faith and fair dealing in employment contract; "Massachusetts courts have expressly denied breach of contract relief to age discrimination plaintiffs, holding that the remedial scheme offered by 151B is comprehensive and exclusive of any contractual remedy"); *Capomaccio v. Bull HN Information Systems*, No. MICV92-013998 (Mass. Super. Ct. Mar. 6, 1995) (1995 WL 808606 at *2) ("[p]laintiff cannot maintain a breach of contract claim for relief for age discrimination because the remedy offered by G.L. c. 151B is exclusive of any contractual remedy").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts II through V and VII for failure to state a claim on which relief may be granted.

                    SONEPAR DISTRIBUTION NEW
                    ENGLAND, INC., CARL BRAND and
                    MARK PETERSON
                    By their attorney,

                    _____
                    Jennifer Catlin Tucker, BBO #547944
                    A. Lauren Carpenter, BBO #551258
                    Sullivan Weinstein & McQuay, P.C.
                    Two Park Plaza, Suite 610
                    Boston, MA  02116-3902
                    617-348-4300

                    James Bucci
                    Spector, Gadon & Rosen, P.C.
                    Seven Penn Center, 1635 Market Street
                    Philadelphia, PA 19103
                    (215) 241-8888

Dated:   January 13, 2004

Certificate of Service

I, Jennifer Catlin Tucker, hereby certify that a copy of the foregoing document was served by mailing same, postage prepaid, first class mail to Daniel S. O'Connor, Esq., Shaevel & Krems, 141 Tremont Street, Boston, MA  02111 on January 13, 2004.

                    _____
                    Jennifer Catlin Tucker