UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-12419-NG

| | |
|---|---|
| ROBERT PILLOW<br>Plaintiff,<br><br>v.<br><br>SONEPAR DISTRIBUTION NEW ENGLAND, INC., CARL BRAND, AND MARK PETERSON,<br>Defendants. | **OPPOSITION TO MOTION TO DISMISS** |

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, the plaintiff submits this opposition to the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**I.   Introduction**

The defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) moving to dismiss Counts II, III, IV, V and VII of the complaint. The plaintiff filed a First Amended Complaint containing seven counts and now submits this opposition to the motion to dismiss. The plaintiff responds to the arguments of the defendants below.

**II.   Standard of Review**

In a motion to dismiss for failure to state a claim under Rule 129b)(6), the court takes all of the plaintiffs factual allegations as true as well as every reasonable inference drawn therefrom. Talbot v. C.R. Bard, Inc., 63 FF3d 25, 27 (1st cir. 1995). The court may grant defendants motion to dismiss only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. Correa-Martinez v.

1

Arrillaga-Belendez, 903 F. 2d 49, 52 (1st Cir. 1990). Under Fed. R. Civ. Pro. 8(a), the plaintiff need only provide a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim and a demand for judgment for the relief the pleader seeks. Given the presumptions that apply in a review of a motion to dismiss for failure to state a claim and the liberal notice pleading requirements in Rule 8, the plaintiffs burden is very low to survive a motion to dismiss under 12(b)(6) and the First Amended Complaint in this case more than meets that burden.

**III.   Argument**

### A. Brand had actual notice of the administrative charge and therefore is properly named in a civil action

In the complaint, the plaintiff asserts a claim against the Vice President of Sales, Carl Brand, for unlawfully interfering with his right to be employed free of discrimination. First Amended Complaint, ¶¶ 41- 59. The defendant asserts that this claim against Brand should be dismissed because Brand was not named in the administrative charge that was dual filed at the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). While there is a general requirement that a party be named in the administrative charge as a prerequisite to being named in a civil action, there is a recognized exception where the defendant has actual notice of the proceedings and an opportunity to participate.

In Denny v. Westfield State College, 25 FEP 957, 960 (D.C.Mass.1981) the plaintiffs named individuals as defendants in a civil discrimination suit who had not been named before the MCAD or the EEOC but were aware of the administrative actions. The court held that "if a party has a close legal relationship with a named party and has actual

2

notice of the EEOC charge, to the extent that he could have participated in conciliation efforts, he should not be heard to cry 'foul' when later made a defendant in the suit." Id. at 962. In Tuber v. Continental Grain Co., 36 FEP 933, 935 (S.D.N.Y.1984), the court held that two individuals who were not named in the EEOC complaint but who had actual notice of the administrative charge and who participated in the case were properly named as defendants in the civil discrimination suit.

In this case, Brand not only had actual knowledge of the administrative action, he participated in the case by being present for the deposition of the plaintiff and was deposed himself. Complaint, ¶ 58. Because brand had actual knowledge of the charge and participated in the proceedings at MCAD, he is properly named as an individual plaintiff despite the fact that he was not identified on the original charge. In accordance with the rule identified in Denny, *supra*, and Tuber, *supra*, the defendants motion to dismiss Count IV for failure to identify him in the administrative charge should be denied.

### B. The complaint sets out a prima facie case for individual liability against Brand and Peterson

Under Count II and Count IV, the plaintiff asserts claims against Brand and Peterson alleging that each of them interfered with his right to be employed free of discrimination in violation of G.L. c. 151B. The defendants argue that these counts should be dismissed because the complaint did not include an allegation that Brand or Peterson had any intent to discriminate against the plaintiff.

Based upon the unambiguous language in G.L. c. 151B, § 4, there is no doubt that individual defendants may be held liable for interference with rights guaranteed by that statute. See e.g. Ruffino v. State Street Bank, 908 F.Supp. 1019 (D.Mass. 1995)

3

(holding, *inter alia*, that Chapter 151B permitted retaliation claims against individuals). The MCAD has defined the essential elements of a claim for individual liability under G.L. c. 151B in the case of <u>Woodason v. Norton School Committee, et. al</u>, 25 MDLR 64 2003 WL 23018196 (MCAD). Under <u>Woodason</u>, the Commission set up three archetypes for individual liability: (1) cases of illegal harassment, (2) cases in which there is direct evidence of discrimination and (3) cases in which there is circumstantial evidence of discrimination. Under the facts alleged in the complaint, the Plaintiff has asserted a circumstantial case of interference and discrimination against the defendants. Consequently, he must establish that the individuals had: (1) the authority or the duty to act on behalf of the employer, (2) their action or failure to act implicated rights under the statute and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was an intent to discriminate or interfere with complainant's exercise of rights. <u>Woodason</u>, *supra*.

The plaintiff alleges that he was an effective long time employee of Eagle Electric and that was performing his duties effectively. Complaint, ¶¶ 19-22. Pillow was in the protected category and he was terminated while younger, less knowledgeable employees were retained and the basis for the dismissal was pretextual. Complaint, ¶¶ 15, 23-25. Pillow alleges that Brand and Peterson made the decision to terminate him and that they based the decision on a sham investigation into his capability as a salesman. The First Amended Complaint contains allegations against both Peterson and Brand sufficient to create a prima facie case of interference under <u>Woodason</u>, *supra*. First, both Peterson and Brand had the authority to act on behalf of Sonepar. Complaint ¶¶ 13 – 14. Second,

4

Pillow alleged that Peterson and Brand terminated him because of age rather than for legitimate reasons; this implicated his rights under the Chapter 151B to be free from age discrimination. Third, Pillow alleged that both Peterson (complaint ¶ 31) and Brand (complaint, ¶ 56) intentionally discriminated against him or acted in deliberate disregard of Pillow's right to be employed free of age discrimination. Assuming, as the court must, that these facts are true, Pillow has clearly satisfied the notice requirements under Fed. R. Civ. Pro. 8(a) and alleged a prima facie case of individual liability against Brand and Peterson under Woodason, supra. The Plaintiff respectfully requests that the court deny the motion to dismiss Count II and Count IV.

### C. The complaint sets out a prima facie case for tortuous interference against Brand and Peterson.

### 1. Pillow is not foreclosed from asserting a claim for tortuous interference with relations that relies, in large measure, on the same facts as his c. 151B claim

The defendant argues that the claim against Brand for tortuous interference with contractual relations must be dismissed because it is merely a "recast" version of the Chapter 151B claim. In Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996), the Supreme Judicial Court stated, "[i]nsofar as the plaintiff's common-law claims are merely recast versions of ... claims under c. 151B, they are barred by that statute's exclusivity provision." This doctrine, however, only applies to bar common law theories developed after the passage of G.L. c. 151B. In Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994), the court specifically recognized that "an employee [is] not foreclosed by c. 151B from raising a tort claim under common-law principles established prior to adoption of c. 151B." Interference with contractual relations has a lengthy history extending back well beyond the passage of G.L. c. 151B. See 37 Mass. Pract. § 97 (Torts), citing Walker v.

5

Cronin, 107 Mass. 55, 562 (1871) and Owen v. Williams, 322 Mass. 356, 360 (1948). Under the doctrine of Charland, Pillow is not foreclosed from asserting a claim for tortuous interference with relations that relies in large measure on the same facts as his c. 151B claim because the tort claim was recognized prior to the passage of G.L. c. 151B.

Furthermore, the rules of civil procedure very clearly authorize a party to plead claims (or defenses) in the alternative. "a party may set forth two or more statements of a claim or defense alternatively or hypothetically…" "When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Fed. R. Civ. Pro. 8(e)(2). The plaintiff has merely exercised his right to plead in the alternative as allowed by Rule 8(e)(2).

### 2. Pillow has a viable claim for tortuous interference against Brand and Peterson

As set forth in the Amended Complaint, Pillow has alleged facts sufficient to support a claim of tortuous interference against both Brand and Peterson. As noted by the defendant, the elements for such a claim are: "(1) that he had an advantageous relationship with his employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions." Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). As to the element of malice or improper motive, the court has held that evidence of a spiteful purpose or hostility may not always be direct and, therefore, "[m]alice may be shown by the proof of facts from which a reasonable inference of malice may be drawn." Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981).

6

In this case, Pillow has alleged facts sufficient to satisfy each element of the prima facie case of tortuous interference agasint Brand and Peterson. First, Pillow had a longstanding, mutually beneficial relationship with Eagle Electric and was performing his job well when he was terminated. Complaint ¶¶ 16-22. Second, Brand and Peterson together made the decision to terminate Pillow based upon an unlawful motive. Complaint ¶¶ 30, 52. Third, Pillow asserts that Brand conducted a sham investigation into Pillow's ability as a sales manager and that he and Peterson acted intentionally to discriminate or with deliberate disregard of Pillow's right to be employed free of age discrimination. Fourth, Pillow suffered a loss of income, emotional distress and other damages as a result of the conduct of Brand and Peterson.

The facts alleged create an inference that Brand concocted this fiction that Pillow was deficient in his technical ability based on a sham investigation and the input of people who had no real understanding of Pillow's skills. The complaint alleges that both Peterson (Complaint ¶ 38) and Brand (Complaint ¶ 63) acted with actual malice in connection with the decision to terminate Pillow. Under Weber v. Community Teamwork, Inc. 434 Mass. 761 (2001), the court defined malice in this context as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest of the employer." Id. at 782 (internal quotations and citations omitted). The court held that a showing that discriminatory animus was the determinative cause of the plaintiff's termination may be taken into consideration by the judge in deciding whether the employee established actual malice. Id. at 782-83. In this case, the plaintiff has alleged sufficient facts by which a jury could conclude that Brand and Peterson terminated Pillow

7

based upon age discrimination and with actual malice and thereby interfered in Pillow's advantageous relations with Sonepar/Eagle Electric.

### 3. The exclusivity provisions of workers' compensation do not bar a claim for tortuous interference

The defendants argue that the tortuous interference claims against Peterson and Brand should be dismissed "to the extent that the plaintiff purports to seek recovery for emotional distress and mental suffering" based upon a theory of the exclusivity of workers compensation. The defendant cites to Green v. Wyman Gordan Co., 422 Mass. at 558. The court in Green held that claims for negligent or intentional infliction of emotional distress are barred by the exclusivity provisions of the Massachusetts Workers' Compensation Act, G.L. c. 152, § 24. The court reasoned that the workers' compensation statute covered personal injuries, including emotional injuries, and thereby covered claims for emotional distress. Relying on precedent, however, the court also recognized that "underlying common law claims survived where physical or mental harm is incidental, and is not an indispensable ingredient" of the claim. Green, supra at 560 (citations omitted). Restating earlier case law, the court "concluded that claims for defamation, malicious prosecution, and violation of civil rights were not compensable under the workers' compensation act and so were not barred." Id (citations omitted).

In this case, Pillow brings claims against Peterson and Brand for tortious interference based upon a theory that they terminated his employment for discriminatory reasons and with actual malice. It is clear from a review of the prima facie case for tortious interference claim that the plaintiff need not provide physical or mental harm as an essential element of the case. See Weber v. Community Teamwork, Inc., 434 Mass.

8

761, 781 (2001). According to the court in Green, the lack of a physical or mental injury as an element is the critical distinction between those claims that are barred by the exclusivity provision of workers' compensation and those that are not. In other words, under the doctrine of exclusivity as stated in Green, a claim is barred under the exclusivity provision if, and only if, the claim involves an assertion of physical or mental injury as an essential element such as negligent or intentional infliction of emotional distress. In this case, the plaintiff need not prove a personal injury to prevail on his claim of tortious interference and therefore he is not barred from pursuing such a case by the workers' compensation exclusion.

### D.     Pillow has asserted a viable claim of detrimental reliance

The Restatement (Second) of Torts § 525 provides that "one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purposes of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss cuased to him by his justifiable reliance upon the misrepresentation."

Under Count VII Pillow asserts that in November or 1999, Peterson told Pillow to lease a car in his name. When Mr. Pillow expressed concern about taking responsibility for the lease, Peterson said to him, "don't worry about it, you're not going anywhere," and he convinced Pillow to lease the car. Pillow leased a car and was obliged to pay lease payments in the amount of $487.00 per month for the term of the lease. When making the decision to lease the car, Mr. Pillow relied to his detriment upon the representation of Sonepar that he (Mr. Pillow) would remain with the company and the

company would pay the lease. Complaint ¶¶ 70-74. These facts establish a viable cause of action. The plaintiff respectfully requests that the court deny the motion to dismiss Cout VII.

> Respectfully submitted,
> Robert A. Pillow,
> By his attorneys,
>
> _____
> Daniel S. O'Connor
> BBO # 634218
> William H. Shaevel
> BBO # 452840
> Shaevel & Krems
> 141 Tremont Street
> Boston, MA 02111
> (617) 556-0244

Dated: January 27, 2004

    I, Daniel O'Connor, certify that a copy of the foregoing document was served by hand to Jennifer Caitlin Tucker, Esq., Sullivan, Weinstein & McQuay, Two Park Plaza, Boston, MA 02116-3902 on January 27, 2004.
_____
Daniel O'Connor

10