UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-12419-NG

ROBERT A. PILLOW,
PLAINTIFF

v.

SONEPAR DISTRIBUTION NEW ENGLAND, INC., AND, CARL BRAND, AND MARK PETERSON,
DefendantS

**First Amended Complaint**

## I. Preliminary Statement

1. This is an action for damages and injunctive relief arising out of the termination of Robert A. Pillow

2. This complaint contains the following claims: Count I – G.L. c. 151B – Age Discrimination; Count II – G.L. c. 151B – aiding and abetting by Peterson; Count III – Tortious interference with contractual relations by Peterson personally; Count IV - G.L. c. 151B – aiding and abetting by Brand; Count V – Tortious interference with contractual relations by Brand personally; Count VI – ADEA – Age Discrimination; and Count VII – Reliance.

## II. Jurisdiction and Venue

3. This civil action was removed to federal court by the defendants.

4. This court has jurisdiction of Court VI alleging a violation of the Age Discrimination in Employment Act pursuant to 28 U.S.C. Section 1331.

5. The plaintiff timely filed a complaint at the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission and more than 90 days have elapsed since the filing.

6. This court has jurisdiction over all the remaining counts in the complaint pursuant to 28 USC Section 1367.

1

7. The action complained of herein occurred in Massachusetts and venue is properly laid in Massachusetts.

### III. Parties

8. The plaintiff, Robert A. Pillow, presently resides at 107 Gaslight Drive, South Weymouth, MA 02190.

9. The defendant, Sonepar Distribution New England, Inc. (formerly known as Sonepar Distribution US, Inc.) is a foreign corporation operating within Massachusetts. (hereafter referred to as Sonepar).

10. Eagle Electric Supply Co is a division of Sonepar.

11. Eagle Electric Supply Co is located at 135 Will Drive, Canton MA 02021 in Norfolk County.

12. Sonepar, at the relevant time, had 20 or more employees

13. The defendant, Mark Peterson was, at the relevant time, the President of Sonepar.

14. The defendant Carl Brand was, at the relevant time, the Vice President of Sales of Sonepar.

### Count I – G.L. c. 151B – Age Discrimination

15. Pillow was born on September 14, 1940.

16. Pillow worked for Eagle Electric Supply Co. ("Eagle Electric") from 1966 until 1978.

17. Pillow returned to work for Eagle Electric in 1985 and I worked there continuously from that time until his termination on September 8, 2000.

18. Eagle Electric was bought by Sonepar Distribution US, Inc., in or about September of 1999.

19. Pillow worked as a salesman for Eagle Electric/Sonepar.

20. Pillow was a very effective salesman.

21. In his last full year at Eagle Electric/Sonepar Pillow's accounts increased approximately 18% in gross sales over the prior year.

2

22. Pillow was never reprimanded or disciplined while working at Eagle Electric/Sonepar.

23. The only reason given to Pillow for his termination was that he did not have sufficient technical knowledge to service the Original Equipment Manufacturing (OEM) customers.

24. Pillow had as much, or more, technical knowledge than the other salesmen and, in particular, Pillow had more technical knowledge regarding OEM products than the younger employees who were retained when he was fired.

25. Sonepar terminated Pillow on account of his age.

26. As a result thereof, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count II – G.L. c. 151B – Peterson interfered with Pillow's rights in deliberate disregard of those rights

27. The allegations of Count I paragraphs one through twenty-six are incorporated herein by reference.

28. Mark Peterson had the authority or duty to act on behalf of the employer.

29. Peterson at one point asked Pillow when he would retire.

30. Peterson participated in the decision to terminate Pillow's employment with knowledge that it was based upon a sham investigation into his skills.

31. Peterson's action in terminating Pillow's employment implicated rights under G.L. c. 151B.

32. Peterson acted intentionally to discriminate or with deliberate disregard of Pillow's right to be employed free of age discrimination.

33. Peterson's conduct was outrageous and grounds for condemnation and deterrence.

34. As a result of Peterson's conduct, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count III – Tortious interference with Advantageous/contractual Relations by Peterson personally

35. The allegations of paragraphs one through thirty-four are incorporated herein by reference.

36. Pillow had an at will employment contract with Eagle Electric/Sonepar.

37. Peterson interfered with that contract by terminating Pillow for unjustified reasons.

38. Peterson acted with actual malice in terminating Pillow's employment.

39. As a direct and proximate result of Peterson's interference, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count IV – G.L. c. 151B – Brand interfered with Pillow's rights in deliberate disregard of those rights

40. The allegations of paragraphs one through thirty-nine are incorporated herein by reference.

41. Peterson hired Brand as Vice President of Sales and Brand officially started as V.P. of Sales for Eagle Electric on July 30, 2000.

42. There was minimal interaction between Brand and Pillow for the five weeks that they worked together.

43. In terms of personal contact, there was only a single 10-15 minute one-on-one meeting between Brand and Pillow before Pillow's discharge on September 8, 2000.

44. Brand never went on a sales call with Pillow.

45. Brand had the authority or duty to act on behalf of the employer.

46. Sometime in August 2000, Peterson and Brand met with Carl Svendsen, the Vice President of Engineering, and asked him to assess the account manager's technical skills.

47. Svendsen responded to the request in that meeting and gave his perception of the technical skills of the account managers.

48. Svendsen made the assessment without speaking to any of the sales engineers; without speaking to any of the customers of the company; without speaking to the account managers themselves and without reviewing any documentation.

4

49. Svendsen gave his opinion on the technical skills of the account managers after considering the question for 10-15 minutes.

50. Brand allegedly spoke with John McWeeney about the technical skills of the account managers.

51. At the time, McWeeney did not work for Sonepar.

52. Brand participated in the decision to terminate Pillow's employment.

53. Brand based his decision to recommend the dismissal of Pillow on the conversations with Svendsen and McWeeney.

54. Brand performed a sham investigation into Pillow to create a pretext for the termination.

55. Brand's action in terminating Pillow's employment implicated rights under G.L. c. 151B.

56. Brand intentionally discriminated against Pillow or acted in deliberate disregard of Pillow's right to be employed free of age discrimination.

57. Brand's conduct was outrageous and grounds for condemnation and deterrence.

58. Brand was not named in the administrative charge at MCAD/EEOC but had actual notice of the allegations because he was present at Pillow's deposition and was himself deposed in connection with the case.

59. As a result of Brand's conduct, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count V – Tortious interference with Advantageous Relations/Contractual by Brand personally

60. The allegations of paragraphs one through fifty-nine are incorporated herein by reference.

61. Pillow had an at will employment contract with Sonepar.

62. Brand interfered with that contract by performing a sham investigation into Pillow and recommending that Pillow be terminated based upon the results of the investigation.

5

63. Brand acted with actual malice in participating in the decision to terminate Pillow's employment.

64. As a direct and proximate result of Brand's interference, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count VI – ADEA – Age Discrimination

65. The allegations of paragraphs one through sixty-five are incorporated herein by reference.

66. Sonepar terminated Pillow because of his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Sections 621 et seq.

67. The discriminatory conduct was willful.

68. As a result thereof, Pillow suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count VII – Misrepresentation and/or Reliance

69. The allegations of paragraphs one through sixty-eight are incorporated herein by reference.

70. In November or 1999, Peterson told Pillow to lease a car in his name.

71. When Mr. Pillow expressed concern about taking responsibility for the lease, Peterson said to him, "don't worry about it, you're not going anywhere," and he convinced Pillow to lease the car.

72. Pillow leased a car and was obliged to pay lease payments in the amount of $487.00 per month for the term of the lease.

73. During his employment at Sonepar, the company paid the monthly lease obligation but Pillow had to assume this obligation upon his termination.

74. When making the decision to lease the car, Mr. Pillow relied to his detriment upon the representation of Sonepar that he (Mr. Pillow) would remain with the company and the company would pay the lease.

6

75. Pillow has a claim for detrimental reliance against Sonepar.

**WHEREFORE**, the plaintiff demands judgment of the defendant for damages, costs and interest.

Specifically, Pillow demands that:

A. He is reinstated to his former position.

B. He is awarded back pay, front pay, damages for reduction in pension, and other compensatory damages with interest thereon.

C. He is awarded emotional distress damages.

D. He is awarded punitive damages.

E. He is awarded attorneys fees.

F. Sonepar reimburse Pillow for the car lease payments he assumed after relying on Peterson's representations that Pillow would remain with Sonepar.

G. The plaintiff requests that the court grant such other relief as appears just and proper.

Respectfully submitted,
Robert A. Pillow,
By his attorneys,

_____
Daniel S. O'Connor
BBO # 634218
William H. Shaevel
BBO # 452840
Shaevel & Krems
141 Tremont Street
Boston, MA 02111
(617) 556-0244

Dated: January 27, 2004

7

    I, Daniel O'Connor, certify that a copy of the foregoing document was served by hand to Jennifer Caitlin Tucker, Esq., Sullivan, Weinstein & McQuay, Two Park Plaza, Boston, MA 02116-3902 on January 27, 2004.

_____
Daniel O'Connor