UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT PILLOW

          Plaintiff,

vs.

SONEPAR DISTRIBUTION NEW
ENGLAND, INC., CARL BRAND, and
MARK PETERSON

          Defendants.

Civil Action No. 03-12419-NG

## MEMORANDUM AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND REPLY ON MOTION TO DISMISS ORIGINAL COMPLAINT

Defendants Sonepar Distribution New England, Inc. ("Sonepar"), Carl Brand, and Mark Peterson (sometimes collectively "defendants") hereby move to dismiss Counts II, III, IV, V, and VII of the First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants also reply here to plaintiff's Opposition to Motion to Dismiss the original Complaint ("Opposition" or "Opp'n").[1]

## INTRODUCTION

Defendants filed a motion to dismiss plaintiff's original Complaint on January 13, 2004 ("MTD"). Their motion pointed out fatal deficiencies in the claims against the individual defendants (Counts II, III, IV, V), as well as the "Reliance" claim against Sonepar (Count VII).

---

[1] Because the First Amended Complaint suffers from many of the same deficiencies as the original Complaint, and in the interest of avoiding needless duplication, defendants incorporate here by reference in support of this motion their Memorandum in Support of Motion to Dismiss the original Complaint ("MTD"), as well as their Motion to Dismiss and attachment thereto.

On January 27, 2004, plaintiff simultaneously filed (1) his opposition to defendants' motion to dismiss the original Complaint, and (2) his First Amended Complaint ("Amended Complaint" or "Amended Cp."). The Amended Complaint adds no substantive allegations of fact to support any of the claims, and does little more than plug in conclusory catchphrases that correspond to some of the legal elements defendants identified as missing.

Because the allegations of the First Amended Complaint continue to be deficient, including for many of the same reasons set forth in the motion to dismiss the original Complaint, the Court should dismiss Counts II, III, IV, V, and VII of the Amended Complaint.

## DISCUSSION

### I. THE CHAPTER 151B CLAIM AGAINST CARL BRAND SHOULD BE DISMISSED BECAUSE HE WAS NOT NAMED IN THE MCAD COMPLAINT.

In his Opposition, plaintiff acknowledges the "general requirement that a party be named in the administrative charge as a prerequisite to being named in a civil action," and he also admits that defendant Carl "Brand <u>was not named</u> in the administrative charge at MCAD/EEOC." Opp'n at 2; Amended Cp. ¶58 (emphasis added). Indeed, plaintiff does not deny that the charge <u>did not refer to or identify Mr. Brand in any way</u>, whether by his position at Sonepar or by his purportedly actionable conduct. *See* MTD at 4.

There is no authority that could justify allowing plaintiff to sue Mr. Brand without naming him in the MCAD charge merely because Mr. Brand knew about the proceeding and was "present at Pillow's deposition and was himself deposed in connection with the

2

case," as plaintiff urges. Amended Cp. ¶58; Opp'n at 3. In fact, *Wright v. CompUSA, Inc.*, 183 F. Supp. 2d 308, 310 (D. Mass. 2001), directly contradicts this argument. In *Wright*, the court held that an individual defendant who was deposed in an MCAD proceeding but not identified in the MCAD charge could not be sued. As the court explained, the individual defendant's appearance for a deposition in the MCAD proceeding "did not put him on notice that he was an intended respondent[,] [n]or did appearing at the deposition constitute an opportunity to conciliate the claims against him, since he was unaware that there were any." 183 F. Supp. 2d at 310 (emphasis added). In other words, the Court stated, "[a]ppearing for a deposition falls far short of being named as a party subject to individual liability in the MCAD proceeding." *Id.* (emphasis added).

The cases on which plaintiff relies fail to support his argument that Mr. Brand's attendance at his own and Pillow's depositions could justify a suit against Mr. Brand when he was not named in the MCAD charge. Plaintiff's cases are entirely inapposite in the first instance because they apply the administrative requirements of Title VII, not of Chapter 151B, which controls here. Moreover, instead of supporting plaintiff's position, one of plaintiff's cases, *Denny v. Westfield State College*, 25 F.E.P. 957 (D. Mass. 1981) (1981 WL 27052), even if it were applicable at all, would argue strongly against allowing plaintiff to maintain a claim against Mr. Brand. Namely, while allowing Title VII claims to go forward against certain parties whose purported participation in the discriminatory conduct was actually referenced in the EEOC charge, the Court in *Denny* dismissed the Title VII claims against an individual defendant, Marrotte, who was not named in the charge, because there was "no positive indication that Marrotte knew that plaintiff's charges implicated him directly." 1981 WL 27052 (emphasis added). *See also Richards*

3

*v. Walter Fernald State School*, No. 961357 (Mass. Super. Ct. Jul. 31, 2000) (2000 WL 1473024) (dismissing Chapter 151B claim against individual defendant who was aware of plaintiff's MCAD claim but was not named in charge; a party's "mere awareness that a claim has been filed does not suffice" to support a lawsuit against him).

In short, the exception on which plaintiff relies cannot save plaintiff's Chapter 151B claim against Carl Brand. Mr. Brand was not identified in the charge by name or position, nor did the MCAD charge refer to any conduct by Mr. Brand, much less the conduct that plaintiff now evidently claims was actionable (i.e., the purportedly "sham" investigation). Mr. Brand's mere attendance at depositions gave him no notice that the plaintiff had any intent to assert a claim of individual liability against <u>him</u>. Because plaintiff has failed to establish that Mr. Brand had notice of or an opportunity to conciliate any charge against him, plaintiff's Chapter 151B claim against Mr. Brand should be dismissed.

II. **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. BRAND OR MR. PETERSON FOR INDIVIDUAL LIABILITY UNDER CHAPTER 151B.**

Defendants' motion to dismiss plaintiff's original Complaint sought the dismissal of the Chapter 151B aiding and abetting claims that plaintiff had originally asserted against Mr. Brand and Mr. Peterson in Counts II and IV, on the ground that plaintiff had failed to allege necessary elements of the claims. *See* MTD at 5-8. Although Counts II and IV of the original Complaint did not identify the provision of Chapter 151B on which plaintiff relied, the titles of those counts in the original Complaint stated that Mr. Brand and Mr. Peterson had "<u>aided and abetted</u>" Sonepar, directly tracking the language of and

4

thus implicating liability under §4(5).[2] Original Complaint at pages 3 and 4, Counts II and IV.

Defendants sought the dismissal of these aiding and abetting claims on the grounds that plaintiff had failed to allege (1) that Mr. Brand or Mr. Peterson had any <u>intent</u> to discriminate against the plaintiff, (2) that they <u>knowingly</u> participated in a <u>joint enterprise</u> to deprive plaintiff of his rights, or (3) that they had committed any <u>separate and distinct wrongful act</u> in furtherance of such enterprise. MTD at 6-8. Defendants also established (and plaintiff does not deny) that each of these three elements is required to state a claim for aiding and abetting under §4(5). *Id.*

Instead of trying to support his claims against Mr. Brand and Mr. Peterson for aiding and abetting under §4(5), plaintiff has apparently abandoned those claims, and now seeks to assert claims for allegedly "interfering" with plaintiff's rights, thus invoking the language of §4(4A).[3] Plaintiff's abandonment of the §4(5) aiding and abetting claims is evident in (1) the fact that Counts II and IV are no longer titled "aiding and abetting," but are now titled "<u>interfer[ence]</u> with [plaintiff's] rights in deliberate disregard of those rights," and (2) the fact that plaintiff has made no attempt to allege critical elements that defendants noted were missing from the aiding and abetting claims, including that Mr. Brand and Mr. Peterson <u>knowingly participated</u> in any <u>joint enterprise</u> to deprive plaintiff of his rights. Amended Cp. at pages 3 and 4. Thus, to the extent plaintiff may continue to assert aiding and abetting claims under §4(5), such claims should be rejected because the Amended Complaint fails to state such claims.

---

[2] M.G.L. c. 151B, §4(5), makes it unlawful for any person to "[a]id, abet, incite, compel or coerce" an act forbidden by Chapter 151B. (Emphasis added.)
[3] M.G.L. c. 151B, §4(4A) makes it unlawful for any person to "[c]oerce, intimidate, threaten or <u>interfere</u> with another in the exercise of a right set out in chapter 151B." (Emphasis added.)

5

Counts II and IV should be dismissed under plaintiff's new theory as well. Although plaintiff has amended his Complaint to try to pay lip service to the requirements the MCAD has recognized must be pled to support an "interference" claim under §4(4A), plaintiff's allegations do not support a reasonable inference that either Mr. Brand or Mr. Peterson had the intent to discriminate, which is a critical element of such a claim. The MCAD has emphasized that individual liability under §4(4A) is limited to persons who actually had the intent to discriminate against the plaintiff, and does not apply to employees who merely played some part in an allegedly discriminatory termination. In *Woodason v. Town of Norton School Committee*, No. 98-BEM-0624 (MCAD 2003) (2003 WL 5544332 at *4), the Full Commission held that, in cases where there is "only circumstantial evidence of discrimination," as plaintiff acknowledges is the case here, Opp'n at 4, an individual employee may be named as a defendant under §4(4A) only if, among other things, "there is evidence articulated by the Complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was intent to discriminate or interfere with complainant's exercise of rights." 2003 WL 554332 at *4 (emphasis added). The Commission in *Woodason* held that the evidence there did not establish the "intent to discriminate" needed to impose individual liability under §4(4A) on a school superintendent for interfering with the plaintiff's right to work free of unlawful discrimination, where the plaintiff claimed only that the superintendent had made the decision to terminate the plaintiff without reasonably accommodating her disability. *Id.*

In two cases decided shortly after *Woodason*, the MCAD made even clearer that liability under §4(4A) does not extend to routine acts taken as part of the individual's job

6

duties, such as a decision to terminate an employee, and that individual liability for "interference" instead requires a showing that the individual was in fact <u>motivated by discriminatory animus</u> against the plaintiff. In *Leveille v. Cherry Hill Estates Condominium Trust*, No. 01260072 (MCAD Dec. 10, 2003) (2003 WL 23018199 at *2), the Full Commission agreed that liability could not be imposed under §4(4A) for "interference" where the defendant did not have "individual <u>intent</u> to engage in illegal discrimination," but had merely acted "under the direction and control" of her employer in committing the allegedly discriminatory acts. (Emphasis added.) In this regard, the Commission in *Leveille* cited *Bendell v. Lee*, No. 95-BEM-0807 (MCAD 2003) (2003 WL 1996271), in which the Full Commission explained that the individual there was found liable for interference "<u>not</u> simply because he was the <u>decision maker</u> in a decision to terminate the complainant's employment, but because he was '<u>motivated by discriminatory intent</u>.'" (Emphasis added.) The Commission in *Bendell* similarly rejected any interpretation of §4(4A) that would hold an individual liable "simply because he or she was the <u>decision maker</u> or the <u>messenger</u> of the decision." 2003 WL 1996271 at *2 (emphasis added).

These recent decisions leave no doubt that an individual defendant may not be held liable merely for making or participating in a termination decision that is challenged as discriminatory. Instead, the crux of a claim under §4(4A) is the individual defendant's <u>intent to discriminate</u> or interfere with plaintiff's rights. Plaintiff's Amended Complaint does not unequivocally allege any such intent, even in conclusory fashion. Instead, plaintiff merely alleges in the disjunctive that Mr. Brand or Mr. Peterson "intentionally discriminated against Pillow <u>or</u> acted in deliberate disregard of Pillow's right to be

7

employed free of age discrimination." Amended Cp. ¶¶32, 56 (emphasis added). Where plaintiff does not even definitely allege that Mr. Brand or Mr. Peterson acted with the <u>intent</u> to discriminate or interfere with plaintiff's rights, he has failed to allege a critical element of an interference claim under §4(4A).

Plaintiff's assertion that Mr. Brand and Mr. Peterson acted in "deliberate disregard" of plaintiff's rights cannot substitute for the missing allegation of intent. Although the Commission has recognized that evidence of acts committed in "deliberate disregard" of the plaintiff's Chapter 151B rights may allow an inference of intentional discrimination, the Commission has not suggested that a mere conclusory <u>allegation</u> that defendants "deliberately disregarded" plaintiff's rights can support an interference claim. Moreover, plaintiff's conclusory and indefinite allegations of "intent" or "deliberate disregard" cannot support the claims in any event because they are belied by plaintiff's own factual allegations.[4]

Namely, plaintiff seeks to suggest "intent" or "disregard" solely by labeling as a "sham" the investigation that resulted in plaintiff's low technical rating and consequent termination. Plaintiff alleges no <u>facts</u>, however, that could support any reasonable inference that the investigation was a "sham" in any sense. Plaintiff alleges, for example, that Mr. Brand and Mr. Peterson met with Carl Svendsen, Sonepar's Vice President of Engineering, and that Mr. Svendsen gave them "his perception of the technical skills of the account managers." Amended Cp. ¶¶46, 47. Plaintiff alleges that Mr. Brand also

---

[4] It is also established in this Circuit that the Court has no obligation to "credit bald assertions [or] unsubstantiated conclusions, ... nor to honor characterizations ... or problematic suppositions." *Day v. Fallon Community Health Plan, Inc.*, 917 F. Supp. 72, 75 (D. Mass. 1996) (citations omitted). Instead, it is the plaintiff's obligation to "set forth <u>reasonably definite factual allegations</u>, either direct or inferential, regarding each material element" needed to sustain his claims. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st. Cir. 1992) (emphasis added).

8

spoke with Mr. McWeeney about the technical skills of Sonepar's account managers. *Id.* ¶50. Plaintiff further alleges that Mr. Brand "based his decision to recommend the dismissal of Pillow on the conversations with Svendsen and McWeeney," and that Mr. Peterson "participated in the decision to terminate Pillow's employment" based upon this investigation. *Id.* ¶¶30, 53.

However, despite defendants' express challenge on this point, *see* MTD at 8, plaintiff still has not alleged any facts that even hint that the investigation might in any way have been a "sham." Plaintiff does not allege, for example, that the conclusions Mr. Brand communicated to Mr. Peterson as to plaintiff's technical skills differed in any way from the assessments that were made and given to him by Mr. Svendsen and Mr. McWeeney. Plaintiff does not allege that Mr. Brand did not believe the conclusions he communicated to Mr. Peterson, or that Mr. Peterson had any reason to doubt Mr. Brand's recommendation. Plaintiff does not allege that Mr. Svendsen or Mr. McWeeney did not believe the assessments they gave Brand about plaintiff's relative technical abilities, nor does he allege that Mr. Brand or Mr. Peterson had any reason to believe or even suspect that the assessments given by Mr. Svendsen and Mr. McWeeney were not accurate.

Additionally, although plaintiff asserts in his Opposition that Mr. Svendsen and Mr. McWeeney had "no real understanding of Pillow's skills," Opp'n at 7, he makes no such allegation in the Amended Complaint. Although plaintiff evidently intends to raise such an implication in his allegation that Mr. Svendsen gave his assessment of the managers' technical skills "after considering the question for 10-15 minutes" and without speaking to sales engineers, customers, or account managers, or reviewing documents, Amended Cp. ¶¶48, 49, plaintiff does not allege that Mr. Svendsen, who he admits was

9

Sonepar's Vice President of Engineering, did not already have sufficient knowledge and experience to make the assessment he gave Mr. Brand. Similarly, while plaintiff alleges that Mr. McWeeney did not work for Sonepar "[a]t the time" he gave Mr. Brand his assessment, Amended Cp. ¶¶50, 51, plaintiff does not allege that Mr. McWeeney lacked sufficient knowledge of the account managers' technical skills to give such an assessment. Finally, and perhaps most critically, plaintiff does not allege that Mr. Brand or Mr. Peterson knew or had any reason to believe that Mr. Svendsen and Mr. McWeeney would rate plaintiff lowest among the other account managers in technical skills, and that an investigation that was based on assessments from Mr. Svendsen and Mr. McWeeney would give them a basis for terminating the plaintiff. In the absence of any such allegations, plaintiff's conclusory assertion that the investigation was a "sham" and a "pretext" cannot support the element of intent required to support these claims.

Because there is no basis for concluding that plaintiff's termination was intentional or even "in deliberate disregard" of plaintiff's rights, plaintiff has failed to allege any basis for imposing individual Chapter 151B liability on Mr. Brand or Mr. Peterson.

### III. THE TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED.

#### A. Plaintiff's Failure to Name Mr. Brand in the MCAD Charge Bars the Tortious Interference Claim Against Him.

Plaintiff's tortious interference claim is nothing more than a recast version of his Chapter 151B claim; as plaintiff himself acknowledges, the tortious interference claim "relies, in large measure, on the same facts as his c. 151B claim." Opp'n at 5. Plaintiff is wrong in asserting that he may maintain a tortious interference claim against Mr. Brand when he did not name Mr. Brand in his MCAD charge. Opp'n at 5-6.

Plaintiff first misplaces reliance on *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586, 631 N.E.2d 555 (1994), in seeking to justify his attempt to circumvent the procedural requirements of Chapter 151B by bringing a discrimination claim against Mr. Brand in the guise of a claim for tortious interference. Although *Charland* recognizes in *dictum* that "preexisting" tort claims are not preempted by Chapter 151B, *Charland* does not address the circumstances at issue here, where a plaintiff has failed to follow his procedural remedies at the MCAD and then brings a tortious interference claim based on exactly the same factual allegations of discrimination that are barred under Chapter 151B.[5]

Plaintiff cites no other authority that could support his position. He also fails to address *Dorn v. Astra USA*, 975 F. Supp. 388, 395 (D. Mass. 1997), which defendants cited in their motion to dismiss, and which is directly on point here. In *Dorn,* the court dismissed a tortious interference claim which was based on allegations of discrimination precisely because the plaintiff had failed to pursue his remedies in the MCAD. *Dorn*, 976 F. Supp. at 395 ("[s]ince plaintiffs did not file their complaints pursuant to M.G.L. c. 151B, their ... claims of ... intentional interference with contractual relations ..., which are grounded in their general claims of sexual harassment, are barred by the exclusivity provision of M.G.L. c. 151B and must be dismissed"). Similarly in *Andrews v. Cressy*, No. Civ. A. 97-01426 (Mass. Super. Ct. Mar. 4, 1998) (1998 WL 157002 at *3), the court dismissed counts for tortious interference against individual defendants who were not named in the MCAD charge to the extent that those counts stated "workplace

---

[5] In *Charland*, the court held that a discrimination claim brought under the Massachusetts equal rights act, M.G.L. c. 93, §§102, 103, was barred by plaintiff's failure to file a charge with the MCAD. 631 N.E.2d at 559.

discrimination claims" that were "based upon [defendant's] alleged <u>wrongful discrimination</u> on the basis of [plaintiffs'] race and age."

Because plaintiff's tortious interference claim against Mr. Brand is, by plaintiff's own admission, based on the same allegations of discriminatory workplace conduct as his Chapter 151B claim, plaintiff cannot avoid the consequences of his failure to name Mr. Brand in the MCAD charge by couching the same allegations as a claim for tortious interference. Count IV should therefore be dismissed.

### B. The Tortious Interference Claims Against Mr. Brand and Mr. Peterson Are Barred Because the Amended Complaint Fails to Allege Necessary Elements of Such Claims.

Defendants' motion to dismiss also sought the dismissal of the tortious interference claims against Mr. Brand and Mr. Peterson on the ground that the original Complaint failed to plead actual malice and inducement of plaintiff's termination. Plaintiff does not deny that these elements are required to state such claims, but has attempted to fill the gaps by adding conclusory assertions that Brand and Peterson "acted with actual malice" in terminating plaintiff's employment and in participating in the decision to terminate his employment. Amended Cp. ¶¶38, 63.

The facts alleged in the Amended Complaint fail on their face to support plaintiff's conclusory assertions that Mr. Brand and Mr. Peterson acted with "actual malice." It is well established that "an inference of malice must be based upon probabilities rather than mere possibilities." *Alba v. Sampson*, 44 Mass. App. Ct. 311, 315-16, 690 N.E.2d 1240, 1243 (1998). Although plaintiff's theory of "malice" depends solely on his assertion that the investigation of his technical abilities was a "sham," plaintiff has failed to allege any facts that could support this conclusory assertion. *See*

12

Section II above. Most critically, perhaps, there are no facts that suggest that either Mr. Brand or Mr. Peterson knew in advance that Mr. Svendsen and Mr. McWeeney would both give low assessments of the plaintiff's technical skills.

Plaintiff has also failed to plead that Mr. Brand or Mr. Peterson induced the termination. Mr. Peterson is alleged only to have "terminated" the plaintiff, and plaintiff alleges that Mr. Brand "interfered ... by performing a sham investigation into Pillow and recommending that Pillow be terminated based upon the results of the investigation." Amended Cp. ¶62. There is no allegation, however, that Mr. Brand engaged in such conduct with the intent of inducing plaintiff's termination, nor is there any allegation that his conduct was actually the cause of plaintiff's termination. Because these allegations fall short of an allegation that plaintiff's conduct intentionally caused plaintiff's termination, the tortious interference claim against Mr. Brand fails, for this reason as well.

### C. The Chapter 151B Claim Bars Plaintiff's Attempt to Recover Damages for Emotional Distress on the Tortious Interference Claims.

Plaintiff does not deny that the Workers' Compensation Act ("WCA") is the exclusive remedy for claims of emotional distress arising in the scope of employment, nor does he deny that his tortious interference claim seeks to recover precisely for such alleged injuries. Contrary to plaintiff's assertion, *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 664 N.E.2d 808 (1996), does not hold that a plaintiff may circumvent the WCA bar by seeking damages for allegedly workplace-inflicted emotional distress under a theory of tortious interference. *Green* did not deal with a tortious interference claim at all, but merely made clear that tort claims for negligent or intentional infliction of

13

emotional distress are barred by the WCA when the injury is alleged to have arisen in the scope of employment.

Moreover, contrary to plaintiff's suggestion, the SJC's decision in *Green* indicates that a claim for tortious interference would in fact be barred by the WCA to the extent it sought to recover for emotional distress. Namely, in a string cite, the SJC in *Green* listed a number of cases in support of its conclusion that the plaintiff's tort claims were barred by the exclusivity provision of the WCA. One of those cases expressly held that Virginia's workers compensation act barred a claim for <u>tortious interference</u> that sought to recover for workplace harassment and discrimination. *See Green*, 422 Mass. at 561, 664 N.E.2d at 814-15, *citing Haddon v. Metropolitan Life Ins. Co.*, 239 Va. 397, 400, 389 S.E.2d 712 (1990), *overruled on other grounds, Lichtman v. Knouf*, 248 Va. 138, 445 S.E.2d 114 (1994). The SJC's express reliance on this decision thus suggests that a tortious interference claim that seeks to recover workplace-related emotional injuries is barred by the WCA.

Plaintiff has also ignored, and failed to distinguish, a case cited in defendants' motion to dismiss which holds that a tort claim is barred by the WCA to the extent it seeks to recover for emotional distress, and which expressly rejects the argument by which plaintiff seeks to justify his claim here. In *Patriarca v. Center for Living and Working, Inc.*, No. 99689B (Mass. Super. Ct. Sep. 8, 1999) (1999 WL 791888) (cited in MTD at 13), the court dismissed the plaintiff's claim for negligent supervision/negligent retention as barred by the WCA "<u>to the extent that [it] allege[d] emotional distress</u> or physical harm resulting from her termination." 1999 WL 791888 at *4 (emphasis added). The court deemed "without merit" plaintiff's argument that the plaintiff should be

allowed to maintain the claim because "mental harm [was] not the essence of her claim," in that plaintiff also sought to recover for the economic harm resulting from the loss of her employment as well as injury to her reputation. *Id.* at *4-5. As the Court explained, a contrary conclusion would improperly allow a plaintiff to "avoid the implications of the [WCA] exclusivity provisions" by bringing the same claim under "any tort based theory." *Id.*

Similarly here, plaintiff may not avoid the WCA exclusivity provisions, which unquestionably bar claims for the workplace infliction of emotional distress, by seeking to recover the same damages under another tort theory. Counts II and IV should therefore be dismissed to the extent they seek to recover for alleged emotional distress.

## IV. PLAINTIFF'S RELIANCE CLAIM SHOULD BE DISMISSED.

### A. The Amended Complaint Fails to State a Viable Claim for Reliance.

Defendants' motion to dismiss the original Complaint pointed out critical defects in plaintiff's "reliance" claim (Count VII). Plaintiff has failed to address any of these deficiencies in his Opposition, and his amendment of the complaint does not even address, much less cure, those deficiencies. Most critically, plaintiff wholly ignores the requirement that reliance must be reasonable, and that an at-will plaintiff as a matter of law cannot reasonably rely on asserted promises of continued employment when they are as vague as those alleged by the plaintiff, namely, "you're not going anywhere." Amended Cp. ¶71. Plaintiff also fails to explain how such a vague promise could meet the requirements of definiteness and certainty needed to enforce a promise on a theory of detrimental reliance.

Additionally, plaintiff has failed to address the fact that he does not allege any detriment or inequity that could support enforcement of the purported promise. The mere fact that plaintiff assumed payments on a car lease after his termination, as he now alleges, does not suggest that Sonepar was unjustly enriched at his expense. Because plaintiff's Opposition and Amended Complaint do nothing to cure the obvious and fatal deficiencies in plaintiff's "reliance" claim, that claim should be dismissed.

### B. The Exclusivity of Chapter 151B Bars Plaintiff's "Reliance" Claim.

Defendants' motion to dismiss the original Complaint sets out a number of authorities that definitively establish that a claim such as plaintiff's, which seeks to recover for a purportedly discriminatory termination on a contract theory, is precluded by Chapter 151B. Plaintiff cannot, and does not, deny that his reliance claim is based on the purportedly discriminatory termination of his employment and is thus merely a recast version of his Chapter 151B claim. Plaintiff offers no authority under which his claim could go forward, and his Opposition entirely ignores the arguments in defendants' motion to dismiss. Because plaintiff's reliance claim is merely a recast version of his Chapter 151B claim, and because Chapter 151B plainly bars the reliance claim, Count VII should be dismissed for this reason as well.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts II through V and VII of the Amended Complaint for failure to state a claim on which relief may be granted.

SONEPAR DISTRIBUTION NEW ENGLAND, INC., CARL BRAND and MARK PETERSON
By their attorneys,

*/s/ Jennifer Catlin Tucker / APC*
*/s/ A. Lauren Carpenter*

Jennifer Catlin Tucker, BBO #547944
A. Lauren Carpenter, BBO #551258
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA 02116-3902
617-348-4300

James Bucci
Spector, Gadon & Rosen, P.C.
Seven Penn Center, 1635 Market Street
Philadelphia, PA 19103
(215) 241-8888

Dated: February 13, 2004

### Certificate of Service

I, A. Lauren Carpenter, hereby certify that a copy of the foregoing document was served by mailing same, postage prepaid, first class mail to Daniel S. O'Connor, Esq., Shaevel & Krems, 141 Tremont Street, Boston, MA 02111 on February 13, 2004.

*/s/ A. Lauren Carpenter*
A. Lauren Carpenter