UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-12419-NG

ROBERT PILLOW
    Plaintiff,

v.

SONEPAR DISTRIBUTION NEW ENGLAND, INC., CARL BRAND, AND MARK PETERSON,
    Defendants.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, the plaintiff submits this opposition to the defendants' motion to dismiss the first amended complaint under Fed. R. Civ. P. 12(b)(6).

## I.   Introduction

The defendant filed a motion to dismiss the first amended complaint under Fed. R. Civ. P. 12(b)(6) and a reply on the motion to dismiss the original complaint moving to dismiss Counts II, III, IV, V and VII of the complaint. The plaintiff hereby files this opposition to the motion to dismiss. The plaintiff responds to the arguments of the defendants below.

## II.   Standard of Review

In a motion to dismiss for failure to state a claim under Rule 129b)(6), the court takes all of the plaintiffs factual allegations as true as well as every reasonable inference drawn therefrom. Talbot v. C.R. Bard, Inc., 63 FF3d 25, 27 (1st cir. 1995). The court may grant defendants motion to dismiss only if it clearly appears, according to the facts

1

alleged, that the plaintiff cannot recover on any viable theory. Correa-Martinez v. Arrillaga-Belendez, 903 F. 2d 49, 52 (1st Cir. 1990). Under Fed. R. Civ. Pro. 8(a), the plaintiff need only provide a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim and a demand for judgment for the relief the pleader seeks. Given the presumptions that apply in a review of a motion to dismiss for failure to state a claim and the liberal notice pleading requirements in Rule 8, the plaintiffs burden is very low to survive a motion to dismiss under 12(b)(6) and the First Amended Complaint in this case more than meets that burden.

**III.   Argument**

    **A.   Brand had actual notice of the administrative charge and therefore is properly named in a civil action**

In the complaint, the plaintiff, Robert A. Pillow ("Pillow"), asserted a claim under G.L. c. 151B against the Vice President of Sales, Carl Brand, for unlawfully interfering with his right to be employed free of discrimination. First Amended Complaint, ¶¶ 41-59 (Count IV). Specifically, Pillow alleged that Brand intentionally discriminated against him or acted in deliberate disregard of his right to be employed free of age discrimination. First Amended Complaint, ¶ 56. The defendant argues that the G.L. c. 151B claim against Brand in his individual capacity should be dismissed because Brand was not named in the administrative charge that was dual filed at the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). Pillow argues that Brand's alleged violation of G.L. c. 151B was within the scope of the investigation at MCAD and, as a result, the Count against Brand is cognizable and not subject to dismissal.

2

The general rule is that a complainant who does not name a party in a charge at MCAD may be precluded from bringing a claim under G.L. c. 151B against that party in court. Chatman v. Gentle Dental Ctr. of Waltham, 973 F.Supp. 228, 233 (D.Mass.1997). There is, however, an exception to the general rule that recognizes that "a claim that was not raised in an administrative charge will survive if it is reasonably within the scope of an agency investigation of the administrative charge." Perch v. City of Quincy, 204 F.Supp.2d 130, 133 (D.Mass 2002)(internal citations and quotations omitted). This rule is well accepted and was stated clearly in Perch:

> A plaintiff cannot bring an unlawful discrimination action in federal court under Mass. Gen. L. ch. 151B unless she has first filed a complaint of unlawful discrimination with the MCAD within six months of the discriminatory action. See Mass. Gen. Laws ch. 151B, §§ 5-9; Desando v. Lucent Technologies, 193 F.Supp.2d 358 (D.Mass.2002). The purpose of this statutory filing requirement is two-fold: to provide the employer with prompt notice of the claim and to create an opportunity for the agency to conciliate the claim. See Fant v. New England Power Serv. Co., 239 F.3d 8, 11 (1st Cir.2001). However, a plaintiff's civil complaint need not be an exact replica of her administrative charge to meet the Chapter 151B filing requirement. See Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir.1990) ("An administrative charge is not a blueprint for the litigation to follow."); Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir.1996) (holding that "an employee is not required to comprehensively set forth with literary exactitude all of the facts and theories upon which his or her claim is based"). Instead, a claim that was not raised in an administrative charge will survive if it "is reasonably within the scope of an agency investigation of [the] administrative charge." Lattimore, 99 F.3d at 464. This scope-of-the-investigation rule "reflects the idea that the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover." Davis v. Lucent Technologies, 251 F.3d 227, 233 (1st Cir.2001). Perch v. City of Quincy, 204 F.Supp.2d 130, 133 (D.Mass 2002).

In the instant case, the MCAD ordered the parties to engage in pre-determination discovery, which is one of the investigative tools at the disposal of the Commission. 804 CMR 1.13(7). After conducting discovery, Pillow submitted a Memorandum of Fact and

3

Law (Ex. 1) and a Supplemental Memorandum of Fact and Law (Ex. 2) to the Commission as part of its investigation. In reviewing these submissions, it is clear that Pillow articulated the theory that Brand "performed a sham investigation into Pillow to create a pretext for the termination." First Amended Complaint, ¶ 54.[1] Pillow deposed Brand and in the submissions to the Commission, Pillow focused on Brand's lack of a credible explanation for the decision to terminate Pillow from employment. A reasonable inference can be drawn that Brand's justification for Pillow's dismissal was invented and done in deliberate disregard of Pillow's rights under G.L. c. 151B. Because Brand's conduct that allegedly violated G.L. c. 151B was within the scope of the investigation at MCAD, Pillow can properly assert a claim against him in court based upon that conduct despite the fact that he was not named in the original charge. Perch, 204 F.Supp 2d at 133-134.

### B. The complaint sets out a prima facie case for individual liability against Brand and Peterson

Under Count II and Count IV, the plaintiff asserted claims against Brand and Peterson alleging that each of them interfered with his right to be employed free of discrimination in violation of G.L. c. 151B. The defendants argue that these counts

---

[1] "Normally, courts cannot consider documents not attached to, or expressly referenced by, the complaint unless the motion is properly converted into one for summary judgment under Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b)(6). A narrow exception, however, exists for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Chief Justice Cushing Highway Corp. v. Limbacher, 145 F.Supp.2d 108, 110 (D.Mass.,2001). In this case, the court must look to the documents submitted in conjunction with the MCAD investigation to properly apply the scope of investigation exception. Under Limbacher, the court can do so without converting the motion to dismiss into a motion for summary judgment.

4

should be dismissed because the complaint did not include an allegation that Brand or Peterson had any intent to discriminate against the plaintiff.

Based upon the unambiguous language in G.L. c. 151B, § 4, there is no doubt that individual defendants may be held liable for interference with rights guaranteed by that statute. See e.g. Ruffino v. State Street Bank, 908 F.Supp. 1019 (D.Mass. 1995) (holding, *inter alia*, that Chapter 151B permitted retaliation claims against individuals). The MCAD has defined the essential elements of a claim for individual liability under G.L. c. 151B in the case of Woodason v. Norton School Committee, et. al, 25 MDLR 64 2003 WL 23018196 (MCAD). Under Woodason, the Commission set up three archetypes for individual liability: (1) cases of illegal harassment, (2) cases in which there is direct evidence of discrimination and (3) cases in which there is circumstantial evidence of discrimination. Under the facts alleged in the complaint, the Plaintiff has asserted a circumstantial case of interference and discrimination against the defendants. Consequently, he must establish that the individuals had: (1) the authority or the duty to act on behalf of the employer, (2) their action or failure to act implicated rights under the statute and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was an intent to discriminate or interfere with complainant's exercise of rights. Woodason, *supra*. Pillow's First Amended Complaint contains allegations that satisfy each element of a claim for unlawful interference in violation of G.L. c. 151B against Brand and Peterson.

The plaintiff alleges that he was an effective long time employee of Eagle Electric and that was performing his duties effectively. Complaint, ¶¶ 19-22. Pillow was in the

5

protected category and he was terminated while younger, less knowledgeable employees were retained and the basis for the dismissal was pretextual. Complaint, ¶¶ 15, 23-25. Pillow alleges that Brand and Peterson made the decision to terminate him and that they based the decision on a sham investigation into his capability as a salesman. The First Amended Complaint contains allegations against both Peterson and Brand sufficient to create a prima facie case of interference under <u>Woodason</u>, *supra*. First, both Peterson and Brand had the authority to act on behalf of Sonepar. Complaint ¶¶ 13-14. Second, Pillow alleged that Peterson and Brand terminated him because of age rather than for legitimate reasons; this implicated his rights under the Chapter 151B to be free from age discrimination. Third, Pillow alleged that both Peterson (complaint ¶ 31) and Brand (complaint, ¶ 56) intentionally discriminated against him or acted in deliberate disregard of Pillow's right to be employed free of age discrimination. Assuming, as the court must, that these facts are true, Pillow has clearly satisfied the notice requirements under Fed. R. Civ. Pro. 8(a) and alleged a prima facie case of individual liability against Brand and Peterson under <u>Woodason</u>, supra.

In the course of that pre-determination discovery, Pillow uncovered the following facts: Brand worked at the employer for about five weeks before making the decision to dismiss Pillow. During that five week period, there was only a single 10-15 minute one-on-one meeting between Brand and Pillow before Pillow's discharge on September 8, 2000. Apart from this meeting and other limited contact, Brand essentially ignored Pillow. Pillow called Brand on a number of occasions to discuss issues but Brand would not return the phone calls. In addition, Brand never went on a sales call with Pillow. See Ex. 1 and Ex. 2.

6

The Defendant relies upon several MCAD cases to support its position that Counts II and IV should be dismissed. The Defendant asserts that the cases, Woodason v. Norton School Committee, et. al, 25 MDLR 64; Leveille v. Cherry Hill Estates Condominium Trust, No. 01260072 (MCAD Dec. 10, 2003)(2003 WL 23018199); and Bendell v. Lee, 25 MDLR 106 (2003), stand for the proposition that plaintiff must prove discriminatory animus to establish individual liability under G.L. c. 151B, § 4(4A). The Defendant asserts that an individual defendant may not be held liable merely for participating in the termination decision but only upon a showing of intent to discriminate. The defendants argue that the allegation that Brand or Peterson "intentionally discriminated against Pillow or acted in deliberate disregard of Pillow's right to be employed free of age discrimination" is insufficient. Defendants' Memo and Motion to Dismiss First Amended Complaint, p. 7-8

The MCAD cases relied upon by the defendant in this matter were decided after discovery and after a full evidentiary hearing. Based upon the facts presented at the hearing, the Commission determined that there was not sufficient evidence of discriminatory animus to impose individual liability under G.L. c. 151B, § 4(4A). By contrast, the court in the instant case is evaluating the sufficiency of the pleadings upon a motion to dismiss before a responsive pleading has even been filed. This is an obvious and crucial distinction. The only question before the court is whether the plaintiff has satisfied the minimum pleading requirements required by the rules.

In the case Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002), the United States Supreme Court examined the pleading requirements in a federal court discrimination case. The plaintiff filed a complaint alleging a violation of Title VII and

7

the Age Discrimination in Employment Act. In affirming the District Court's dismissal of the complaint, the Second Circuit relied upon precedent that an employment discrimination complaint needed to allege facts constituting a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792. The U.S. Supreme Court reversed.

The court noted that the prima facie case under *McDonnel Douglas* is an evidentiary standard, not a pleading requirement, Swierkiewicz 534 U.S. 506 at 510, and held that the ordinary rules of assessing the sufficiency of a complaint apply. Swierkiewicz 534 U.S. 506 at 511. Requiring a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz 534 U.S. 506 at 512. The Court held that the complaint at issue easily satisfied the requirements of Rule 8(a) because it gave the defendant fair notice of the basis for the petitioners claims. Id. at 514.

In the instant case, the defendants argue that Counts II and IV are subject to dismissal because the complaint insufficiently establishes that Brand and Peterson acted with discriminatory animus. The defendants acknowledge that the complaint contains an allegations that Brand and Peterson intentionally discriminated against Pillow but suggest that there is inadequate evidence of this conduct. As in Swierkiewicz 534 U.S. 506 at 510, the defendant is trying to impose an evidentiary standard on the plaintiff at the pleading stage of the litigation. Under Swierkiewicz it is clear that a complaint for discrimination satisfies the requirements of Rule 8(a) if it gives the defendant fair notice of the basis for the claims. The complaint in the case at bar easily satisfies that

8

requirement. The Plaintiff respectfully requests that the court deny the motion to dismiss Count II and Count IV.

      **C.    The complaint sets out a prima facie case for tortious interference against Brand and Peterson.**

      **1.    Pillow is not foreclosed from asserting a claim for tortious interference with relations that relies, in large measure, on the same facts as his c. 151B claim**

The defendant argues that the claim against Brand and Peterson for tortious interference must be dismissed because it is merely a "recast" version of the Chapter 151B claim. In the case of Comey v. Hill, 387 Mass. 11 (1972), the plaintiff was a salesman who was terminated and filed an action alleging, inter alia, age discrimination and tortious interference. One of the issues squarely before the court was whether G.L. c. 151B provided the exclusive remedy or, in the alternative, was the tortious interference claim viable. The court held that G.L. c. 151B was not the exclusive remedy and affirmed the judgment against the defendant based upon the count alleging tortious interference. The SJC has been clear that Chapter 151B is not to be viewed "as tending to narrow or eliminate a person's common law rights where applicable. The statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies." Comey v. Hill, 387 Mass. at 20 (1982). In Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994), the court specifically recognized that "an employee [is] not foreclosed by c. 151B from raising a tort claim under common-law principles established prior to adoption of c. 151B." Under the doctrine of Comey and Charland, Pillow is not foreclosed from asserting a claim for tortious interference with relations that relies in large measure on the same facts as his c. 151B claim because the tort claim was recognized prior to the passage of G.L. c. 151B.

Furthermore, the rules of civil procedure very clearly authorize a party to plead claims (or defenses) in the alternative. "A party may set forth two or more statements of a claim or defense alternatively or hypothetically…" "When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Fed. R. Civ. Pro. 8(e)(2). The plaintiff has merely exercised his right to plead in the alternative as allowed by Rule 8(e)(2).

### 2. Pillow has a viable claim for tortious interference against Brand and Peterson

As set forth in the Amended Complaint, Pillow has alleged facts sufficient to support a claim of tortious interference against both Brand and Peterson. As noted by the defendant, the elements for such a claim are: "(1) that he had an advantageous relationship with his employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions." Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). As to the element of malice or improper motive, the court has held that evidence of a spiteful purpose or hostility may not always be direct and, therefore, "[m]alice may be shown by the proof of facts from which a reasonable inference of malice may be drawn." Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981).

In this case, Pillow has alleged facts sufficient to satisfy each element of the prima facie case of tortious interference against Brand and Peterson. First, Pillow had a longstanding, mutually beneficial relationship with Eagle Electric and was performing his job well when he was terminated. Complaint ¶¶ 16-22. Second, Brand and Peterson

together made the decision to terminate Pillow based upon an unlawful motive. Complaint ¶¶ 30, 52. Third, Pillow asserts that Brand conducted a sham investigation into Pillow's ability as a sales manager and that he and Peterson acted intentionally to discriminate or with deliberate disregard of Pillow's right to be employed free of age discrimination. Fourth, Pillow suffered a loss of income, emotional distress and other damages as a result of the conduct of Brand and Peterson.

The facts alleged create an inference that Brand concocted this fiction that Pillow was deficient in his technical ability based on a sham investigation and the input of people who had no real understanding of Pillow's skills. See also Ex. 1 and Ex. 2. The complaint alleges that both Peterson (Complaint ¶ 38) and Brand (Complaint ¶ 63) acted with actual malice in connection with the decision to terminate Pillow. Under Weber v. Community Teamwork, Inc. 434 Mass. 761 (2001), the court defined malice in this context as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest of the employer." Id. at 782 (internal quotations and citations omitted). The court held that a showing that discriminatory animus was the determinative cause of the plaintiff's termination may be taken into consideration by the judge in deciding whether the employee established actual malice. Id. at 782-83. In this case, the plaintiff has alleged sufficient facts by which a jury could conclude that Brand and Peterson terminated Pillow based upon age discrimination and with actual malice and thereby interfered in Pillow's advantageous relations with Sonepar/Eagle Electric.

Defendants point out several potential factual allegations that do not appear in the complaint and argue that the absence of these allegations is fatal to the complaint. This argument is at odds with the requirements of Rule 8(a) of Federal Rules of Civil

Procedure. "The pleading rules do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Langadinos v. American Airlines, Inc., 199 F.3d 68, 72 (1st Cir. 2000). "While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." Id. at 72-73. Specifically with respect to the Counts for unlawful interference, the complaint satisfied the notice pleading requirements of Rule 8(a). Plaintiff respectfully requests the court to deny the motion to dismiss.

### 3. The exclusivity provisions of workers' compensation do not bar a claim for tortious interference

The defendants argue that the tortious interference claims against Peterson and Brand should be dismissed "to the extent that the plaintiff purports to seek recovery for emotional distress and mental suffering" based upon a theory of the exclusivity of workers compensation. The defendant cites to Green v. Wyman Gordan Co., 422 Mass. at 558. The court in Green held that claims for negligent or intentional infliction of emotional distress are barred by the exclusivity provisions of the Massachusetts Workers' Compensation Act, G.L. c. 152, § 24. The court reasoned that the workers' compensation statute covered personal injuries, including emotional injuries, and thereby covered claims for emotional distress. Relying on precedent, however, the court also recognized that "underlying common law claims survived where physical or mental harm is incidental, and is not an indispensable ingredient" of the claim. Green, supra at 560

(citations omitted). Restating earlier case law, the court "concluded that claims for defamation, malicious prosecution, and violation of civil rights were not compensable under the workers' compensation act and so were not barred." Id (citations omitted).

In this case, Pillow brings claims against Peterson and Brand for tortious interference based upon a theory that they terminated his employment for discriminatory reasons and with actual malice. It is clear from a review of the prima facie case for tortious interference claim that the plaintiff need not provide physical or mental harm as an essential element of the case. See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). According to the court in Green, the lack of a physical or mental injury as an element is the critical distinction between those claims that are barred by the exclusivity provision of workers' compensation and those that are not. In other words, under the doctrine of exclusivity as stated in Green, a claim is barred under the exclusivity provision if, and only if, the claim involves an assertion of physical or mental injury as an essential element such as negligent or intentional infliction of emotional distress. In this case, the plaintiff need not prove a personal injury to prevail on his claim of tortious interference and therefore he is not barred from pursuing such a case by the workers' compensation exclusion.

**D.    Pillow has asserted a viable claim of detrimental reliance**

The Restatement (Second) of Torts § 525 provides that "one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purposes of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."

13

Under Count VII Pillow asserts that in November or 1999, Peterson told Pillow to lease a car in his name. When Mr. Pillow expressed concern about taking responsibility for the lease, Peterson said to him, "don't worry about it, you're not going anywhere," and he convinced Pillow to lease the car. Pillow leased a car and was obliged to pay lease payments in the amount of $487.00 per month for the term of the lease. When making the decision to lease the car, Mr. Pillow relied to his detriment upon the representation of Sonepar that he (Mr. Pillow) would remain with the company and the company would pay the lease. Complaint ¶¶ 70-74. These facts establish a viable cause of action. The plaintiff respectfully requests that the court deny the motion to dismiss Cout VII.

                                            Respectfully submitted,
                                            Robert A. Pillow,
                                            By his attorneys,

                                            Daniel S. O'Connor
                                            BBO # 634218
                                            William H. Shaevel
                                            BBO # 452840
                                            Shaevel & Krems
                                            141 Tremont Street
                                            Boston, MA 02111
                                            (617) 556-0244

Dated: March 4, 2004

## Certificate of Service

I, Daniel O'Connor, certify that a copy of the foregoing document was served by mail to Jennifer Caitlin Tucker, Esq., Sullivan, Weinstein & McQuay, Two Park Plaza, Boston, MA 02116-3902 and by mail on James Bucci, Spector, Gadon & Rosen, P.C., Seven Penn Center, 1635 Market Street, Philadelphia, PA 19103 on March 4, 2004.

_____
Daniel O'Connor